UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAPRECE BYRD, BRYANT WATTS,
RENAE WHITE, LAURA HERL, DR.
FRANK McWHORTER, ERIC J. HARRIS,
SR., and CONNIE BATES, individually, and
on behalf of all others similarly situated,

        Plaintiff,

v.

VISALUS, INC., NICK SARNICOLA,
ASHLEY SARNICOLA, BLAKE MALLEN,
RYAN BLAIR, TODD GOERGEN, GARY J.
REYNOLDS, VINCENT OWENS, and
MICHAEL CRAIG,

        Defendants.

Case No. 4:17-cv-12626-MFL-DRG

Hon. Matthew F. Leitman

## **VISALUS DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendants ViSalus, Inc., Nick Sarnicola ("N. Sarnicola" or "Mr. Sarnicola"), Ashley Sarnicola ("A. Sarnicola" or "Mrs. Sarnicola"), Blake Mallen, Ryan Blair, Todd Goergen, Gary J. Reynolds, and Michael Craig (collectively, "ViSalus Defendants") hereby file this Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") [Dkt. 30] pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: October 27, 2017

        Respectfully submitted,

        HONIGMAN MILLER SCHWARTZ AND
        COHN LLP

/s/Nicholas B. Gorga
Nicholas B. Gorga (P72297)
Andrew W. Clark (P79165)
660 Woodward Avenue
2290 First National Building
Detroit, MI  48226-3506
Telephone Number: (313) 465-7640
Fax Number: (313) 465-7641
ngorga@honigman.com
aclark@honigman.com

and

QUARLES & BRADY LLP

Kevin D. Quigley (AZ Bar #015972)
Edward A. Salanga (AZ Bar #020654)
Brian A. Howie (AZ Bar #026021)
Michael S. Catlett (AZ Bar #025238)
*All Admitted to Practice in ED MI*
2 North Central Avenue
Renaissance One
Phoenix, AZ 85004
Telephone Number: (602) 229.5200
kevin.quigley@quarles.com
edward.salanga@quarles.com
brian.howie@quarles.com
michael.catlett@quarles.com

*Attorneys for ViSalus Defendants*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CAPRECE BYRD, BRYANT WATTS, RENAE WHITE, LAURA HERL, DR. FRANK McWHORTER, ERIC J. HARRIS, SR., and CONNIE BATES, individually, and on behalf of all others similarly situated, | Case No. 4:17-cv-12626-MFL-DRG |
| Plaintiff, | Hon. Matthew F. Leitman |
| v. | |
| VISALUS, INC., NICK SARNICOLA, ASHLEY SARNICOLA, BLAKE MALLEN, RYAN BLAIR, TODD GOERGEN, GARY J. REYNOLDS, VINCENT OWENS, and MICHAEL CRAIG, | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF VISALUS DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

ViSalus Defendants submit this Memorandum of Points and Authorities in support of their Motion to Dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).

iii

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................iv

TABLE OF AUTHORITIES ...............................................................vi

STATEMENT OF ISSUES PRESENTED...............................................xi

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ......................... xii

MEMORANDUM OF SUPPORT ...........................................................1

    I.     INTRODUCTION................................................................1

    II.    ARGUMENT ....................................................................2

          A.    The Securities-Based Claims (Counts I-V) Fail Because They Do Not Involve A "Security."..........................................2

                1.    Units In the Plan Are Not Securities. ..............................4

                2.    Because Units Are Not Securities, Allegedly Fraudulent Statements Made to Plaintiffs Regarding The Plan Are Not "In Connection With" The Purchase Of A Security. ...........................................8

          B.    The 10b-5(b) Claims Fail Against the ViSalus Defendants Because Plaintiffs Do Not Plead Reliance On Specific Misrepresentations Or Omissions By Each Of The Defendants. ........................................................11

          C.    Plaintiffs' Scheme Liability Claims Under Rule 10b-5(a)/(c) (Count I) Fail As To All Defendants Because Plaintiffs Have Not Pled Separate Fraudulent Acts.................17

          D.    The Section 12 Claim (Count II) Fails As To All Defendants Except ViSalus Because Plaintiffs Do Not Adequately Allege Direct Solicitation. ....................................19

          E.    The MUSA Section 509(2) Claim (Count III) Fails As To All Defendants Except ViSalus Because Plaintiffs Do Not Adequately Allege Direct Solicitation..............................22

F.      Plaintiffs' Investment Adviser Claim Under MUSA
        Section 509 (5)-(6) (Count V) Fails.........................................22

G.      The Secondary Liability Claim Under MUSA Section
        509(7) (Count V) Fails............................................................25

H.      The Conversion Claim (Count VI) Fails...................................27

III.    CONCLUSION ....................................................................................29

CERTIFICATE OF CONFERENCE........................................................................31

CERTIFICATE OF SERVICE ................................................................................32

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Affiliated Ute Citizens of the State of Utah v. United States*,
    406 U.S. 128 (1972) ............................................................. 12

*American Bank & Trust Co. v. Wallace*,
    702 F.2d 93 (6th Cir. 1983) .............................................. 4-5

*Aroma Wines & Equip, Inc. v. Columbian Distrib. Servs., Inc.*,
    871 N.W.2d 136 (Mich. 2015) ............................... 27, 28, 29

*Benzon v. Morgan Stanley Distrib., Inc.*,
    420 F.3d 598 (6th Cir. 2005) ............................................ 18

*Berkwitz v. Humphrey*,
    163 F. Supp. 78 (N.D. Ohio 1958) ..................................... 7

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975) ......................................................... 10

*Bunnell v. Netsch*,
    2013 WL 2494987 (N.D. Tex. June 11, 2013) ..................... 7

*Cavalier Carpets, Inc. v. Caylor*,
    746 F.2d 749 (11th Cir. 1984) .......................................... 12

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) ......................................................... 16

*Chadbourne & Parke LLP v. Troice*,
    134 S. Ct. 1058 (2014) ...............................................*Passim*

*Champions League, Inc. v. Woodard*,
    224 F. Supp. 3d 317 (S.D.N.Y. 2016) ................................ 5

*Frank v. Dana Corp.*,
    547 F.3d 564 (6th Cir. 2008) ............................................ 11

*Fulton County v. MGIC Inv. Corp.*,
    675 F.3d 1047 (7th Cir. 2012) .......................................... 16

*Haase v GunnAllen Fin, Inc.*,
   2011 WL 768045 (E.D. Mich. Feb. 28, 2011) ................................................ 22, 26

*In re Boeing Sec. Litig.*,
   40 F.Supp.2d 1160 (W.D. Wash. 1998) .................................................. 16

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
   843 F.3d 1257 (11th Cir. 2016) ............................................................ 16

*In re Interbank Funding Corp. Sec. Litig.*,
   629 F.3d 213 (D.C. Cir. 2010)............................................................... 12

*In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*,
   553 F. Supp. 2d 902 (S.D. Ohio 2008) ................................................ 18

*In re Royal Dutch/Shell Transp.*,
   2006 WL 2355402 (D.N.J. Aug. 14, 2006) ......................................... 18

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) ................................................................. 13

*Indah v. S.E.C.*,
   661 F.3d 914 (6th Cir. 2011) ............................................................... 10

*Int'l Indus. Contracting Corp. v. Sofir Italia s.r.l.*,
   2017 WL 3499899 (E.D. Mich. Aug. 16, 2017)................................... 29

*Janus Capital Group, Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011).................................................................... 16, 17

*Joseph v. Wiles*,
   223 F.3d 1155 (10th Cir. 2000) ........................................................... 12

*Kellman v. ICS, Inc.*,
   447 F.2d 1305 (6th Cir. 1971) ............................................................. 10

*Kerrigan v. ViSalus, Inc.* ("*Kerrigan I*"),
   112 F. Supp. 3d 580 (E.D. Mich. 2015) ......................................*Passim*

*Kerrigan v. ViSalus, Inc.* ("*Kerrigan II*"),
   2016 WL 892804 (E.D. Mich. Mar. 9, 2016) ................................*Passim*

*Mercantile Bank of Michigan v. CLMIA, LLC*,
   2015 WL 630259 (Mich. Ct. App. Feb. 12, 2015) .............................. 23

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
 547 U.S. 71 (2006).................................................................. 8

*Nolfi v. Ohio Kentucky Oil Corp.*,
 675 F.3d 538 (6th Cir. 2012) ............................................... 12

*People v. Cook*,
 279 N.W.2d 579 (Mich. Ct. App. 1979) ............................... 24

*Pinter v. Dahl*,
 486 U.S. 622 (1988).............................................................. 20

*Pullins v. Klimley*,
 2008 WL 85871 (S.D. Ohio Jan. 7, 2008).............................. 21

*Ratner v. Sioux Nat. Gas Corp.*,
 770 F.2d 512 (5th Cir. 1985) ............................................... 10

*Roman v. Briggs*,
 2001 WL 721331 (Mich. Ct. App. Feb. 27, 2001) ............... 25

*S.E.C. v. Zada*,
 787 F.3d 375 (6th Cir. 2015) ................................................. 4

*SEC v. Capital Gains Res. Bureau, Inc.*,
 375 U.S. 180 (1963).............................................................. 24

*SEC v. Kelly*,
 817 F. Supp. 2d 340 (S.D.N.Y. 2011) ................................... 18

*Smith v. Am. Nat'l Bank & Trust Co.*,
 982 F.2d 936 (6th Cir. 1992) .......................................... 20, 22

*Stoneridge Inv. Partners, LLC v Scientific-Atlanta, Inc.*,
 128 S. Ct. 761 (2008)............................................................ 11

*Sutter v. Ocwen Loan Servicing, LLC*,
 2016 WL 3003346 (Mich. App. May 24, 2016)...................... 28

*Tcherepnin v. Knight*,
 389 U.S. 332 (1967)................................................................ 4

*United Hous. Found., Inc. v. Forman*,
 421 U.S. 837 ........................................................................... 4

*USM Holdings Inc v Simon*,
  2016 WL 4396061 (E.D. Mich. Aug. 18, 2016)............................................. 10, 22

*Whitt v. Sherman Int'l Corp.*,
  147 F.3d 1325 (11th Cir. 1998) ......................................................................... 6, 7

*Williams v. Ocwen Loan Servicing, LLC*,
  2016 WL 5390861 (E.D. Mich. Sept. 27, 2016) .................................................. 29

**Statutes**

15 U.S.C. § 77e ........................................................................................................ 19

15 U.S.C. § 77*l*...............................................................................................*Passim*

15 U.S.C. § 78u-4(b)(2) ........................................................................................... 15

15 U.S.C.A. § 80b-2(11) .......................................................................................... 24

M.C.L. § 451.2102a .......................................................................................... 23, 24

M.C.L. § 451.2403 ................................................................................................... 23

M.C.L. § 451.2501 ..................................................................................................... 3

M.C.L. § 451.2502 ............................................................................................... 3, 23

M.C.L. § 451.2509(2) .............................................................................. 3, 10, 22, 27

M.C.L. § 451.2509(3) .................................................................................... 3, 22, 27

M.C.L. § 451.2509(5) ................................................................................ 3, 22, 23, 27

M.C.L. § 451.2509(6) ........................................................................ 3, 22, 23, 25, 27

M.C.L. § 451.2509(7) ........................................................................... 3, 25, 26, 27

M.C.L. § 451.2509(13) ............................................................................................... 3

M.C.L. § 600.2919a(1)(a) ........................................................................................ 28

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .........................................................i, iii, 27

Federal Rule of Civil Procedure 8 ........................................................................... 27

**Regulations**

17 C.F.R. § 240.10b-5 ........................................................................*Passim*

**Other Authorities**

1 S Corporations Federal Taxation § 11:37 ........................................... 6

52 Fed. Reg. 38400, 38402 (Oct. 16, 1987) ......................................... 24

Applicability of the Investment Advisers Act,
   Investment Advisers Act Release No. 1092 ...................................... 24

Types of Deferred Compensation Arrangements ¶ 5.05,
   1999 WL 1031970 ................................................................................ 6

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.   Have Plaintiffs sufficiently alleged in the FAC that units in the Founders' Equity Incentive Plan are securities?

   **ViSalus Defendants' Answer:  No.**

2.   Does the FAC state a valid claim under Rule 10b-5 in Count I?

   **ViSalus Defendants' Answer:  No.**

3.   Does the FAC state a valid claim under Section 12 in Count II?

   **ViSalus Defendants' Answer:  No.**

4.   Does the FAC state a valid claim under M.C.L. § 451.2509(2) in Count III?

   **ViSalus Defendants' Answer:  No.**

5.   Does the FAC state a valid claim under M.C.L. § 451.2501, 2502, or 2509(2)-(3) in Count IV?

   **ViSalus Defendants' Answer:  No.**

6.   Does the FAC state a valid claim under M.C.L. § 451.2502, 2403(1), or 2509(5)-(7) in Count V?

   **ViSalus Defendants' Answer:  No.**

7.   Does the FAC state a valid claim for statutory or common-law conversion in Count VI?

   **ViSalus Defendants' Answer:  No.**

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Regarding whether units in the Founders' Equity Incentive Plan are securities**

*Berkwitz v. Humphrey*,
  163 F. Supp. 78 (N.D. Ohio 1958)

*Bunnell v. Netsch*,
  2013 WL 2494987 (N.D. Tex. June 11, 2013)

*Whitt v. Sherman Int'l Corp.*,
  147 F.3d 1325 (11th Cir. 1998)

**Regarding whether the alleged misstatements and omissions were made "in connection with" the purchase or sale of security**

*Chadbourne & Parke LLP v. Troice*,
  134 S. Ct. 1058 (2014)

**Regarding pleading requirements for Rule 10b-5(b) claims**

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011)

*Kerrigan v. ViSalus, Inc.* ("*Kerrigan II*"),
  2016 WL 892804 (E.D. Mich. Mar. 9, 2016)

**Regarding pleading requirements for Rule 10b-5(a) and (c) claims**

*Benzon v. Morgan Stanley Distrib., Inc.*,
  420 F.3d 598 (6th Cir. 2005)

*In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*,
  553 F. Supp. 2d 902 (S.D. Ohio 2008)

*Kerrigan v. ViSalus, Inc.* ("*Kerrigan II*"),
  2016 WL 892804 (E.D. Mich. Mar. 9, 2016)

**Regarding pleading requirements for Section 12 claims**

*Kerrigan v. ViSalus, Inc.* ("*Kerrigan II*"),
  2016 WL 892804 (E.D. Mich. Mar. 9, 2016)

*Pinter v. Dahl*,
  486 U.S. 622 (1988)

*Smith v. Am. Nat'l Bank & Trust Co.*,
  982 F.2d 936 (6th Cir. 1992)

**Regarding definition of "investment adviser" under Michigan Uniform Securities Act**

*People v. Cook*,
  279 N.W.2d 579 (Mich. Ct. App. 1979)

*Roman v. Briggs*,
  2001 WL 721331 (Mich. Ct. App. Feb. 27, 2001)

**Regarding pleading requirements for conversion and statutory conversion of money under Michigan law**

*Kerrigan v. ViSalus, Inc.* ("*Kerrigan I*"),
  112 F. Supp. 3d 580 (E.D. Mich. 2015)

**Regarding the "own use" element of statutory conversion under Michigan law**

*Aroma Wines & Equip, Inc. v. Columbian Distrib. Servs., Inc.*,
  871 N.W.2d 136 (Mich. 2015)

*Sutter v. Ocwen Loan Servicing, LLC*,
  2016 WL 3003346 (Mich. App. May 24, 2016)

<u>MEMORANDUM OF SUPPORT</u>

## I.    <u>INTRODUCTION</u>

ViSalus is a multi-level marketing company that sells weight-loss and other related products directly to consumers and through a network of independent promoters.  Plaintiffs are disgruntled independent promoters who assert federal and state securities and conversion claims in connection with ViSalus' "Founders' Equity Incentive Plan" (the "Plan").  The ViSalus Defendants vigorously deny liability under all claims alleged, but treat the factual allegations as true (as they must).  Plaintiffs' securities claims nonetheless fail at the outset because units in the Plan are not securities.  The Plan is a "phantom equity plan," whereby independent promoters who achieve certain metrics in ViSalus' compensation plan become eligible for "units" <u>in the Plan</u>.  The units entitle the Promoter to cash payments; they do not represent actual ownership in ViSalus, are not tradeable, and do not convey rights typically associated with "stock" in a company.  Rather, Plan units convey the right to compensation commensurate with a hypothetical ownership interest in ViSalus (hence the use of the descriptor "phantom").  Thus, any allegedly fraudulent statements made in connection with the Plan are not made "in connection with" the purchase of a security.

Plaintiffs also fail to plead several required elements of their claims—*e.g.*, that they actually read or viewed and relied on statements that they allege to be fraudulent (which is fatal to the Rule 10b-5(b) claims); that any ViSalus Defendant

besides ViSalus directly solicited their participation in the Plan (which is fatal to the Section 12 claims); and that any ViSalus Defendant besides ViSalus received the "specific money" that Plaintiffs paid to ViSalus (which is fatal to the conversion claims). These deficiencies are baffling given Plaintiffs' counsel's prior experience before the Court on these issues. The Court dismissed these claims on the very same grounds when brought, in another putative class action [*Kerrigan v. ViSalus*, No. 14-cv-12693 ("*Kerrigan*")], by the same attorneys against many of the same defendants. The FAC should be dismissed in its entirety.

## II.   ARGUMENT

### A.   The Securities-Based Claims (Counts I-V) Fail Because They Do Not Involve A "Security."

Although Plaintiffs allege in the FAC that they purchased the ViSalus business opportunity and product, Defendants do ***not*** understand the Plaintiffs to be alleging that the ViSalus business opportunity and product are themselves securities. In fact, Plaintiffs and Plaintiffs' Counsel have argued strenuously to the contrary.[1]   [*See Kerrigan*, Dkt. 67 at 24 ("The Court did not find as a matter of law that the business opportunity is a security offering. Plaintiffs do not believe it is . . . .").]   If the ViSalus business opportunity is a security, the RICO claims in

---

[1] The plaintiffs in *Kerrigan*—represented by the same attorneys who represent the Plaintiffs here—recently argued in that case that every member of the putative class in this case also is a member of the *Kerrigan* class.   [*Kerrigan*, Dkt. 189 at 2.] Taking that representation at face value, it is fair to hold Plaintiffs here to the positions taken by the plaintiffs in *Kerrigan*.

*Kerrigan* are barred as a matter of law.  *See Kerrigan v. ViSalus, Inc. ("Kerrigan I")*, 112 F. Supp. 3d 580, 599 (E.D. Mich. 2015).  The ViSalus Defendants instead understand Plaintiffs to be alleging here only that <u>units</u> in the <u>Plan</u> are securities.

Counts I-V of the FAC are based on federal and state securities law, and (unsurprisingly) each cause of action requires that the plaintiff have purchased a *security*.  *See* 17 C.F.R. § 240.10b-5 (prohibiting conduct "in connection with the purchase or sale of any security" (Count I)); 15 U.S.C. § 77*l* (creating liability "to the person purchasing such security" (Count II)); M.C.L. § 451.2509(2) (creating liability "to the purchaser" of a security (Count III)); M.C.L. § 451.2509(5)-(7) (secondary liability for securities fraud) (Count V)).[2]  Units in the Plan, however, are not "securities" in the first place.  Moreover, the FAC does not allege that Plaintiffs "purchased" their units in the Plan.  These threshold deficiencies are fatal to the securities-based claims (Count I-V).

---

[2] Plaintiffs cram several distinct theories of liability—"Fraudulent Sale of Securities, Fraud in the Inducement"—into one claim purportedly brought under the Michigan Uniform Securities Act ("MUSA").   Count IV cites M.C.L. § 451.2501 and 2502, but neither section creates a private cause of action.  *See* M.C.L. § 451.2509(13).  Also, M.C.L. § 451.2502, which prohibits certain conduct by investment advisers, does not apply to any Defendant in this case.  [*See infra* § II.F.]   Finally, Plaintiffs cite M.C.L. § 451.2509(3), which creates a cause of action for the *seller* of a security against a purchaser.  Plaintiffs do not (and cannot) allege that they sold a security to any Defendant.   Count V is a similar indiscriminate jumble of disparate causes of action—secondary liability for securities fraud and investment adviser liability.   Count V also cites M.C.L. § 451.2502, which does not give rise to a private right of action.

1.    <u>**Units In the Plan Are Not Securities.**</u>

The securities claims fail because units in the Plan are not securities.  The Supreme Court has explained that "every securities case in which this Court has found a fraud to be 'in connection with' a purchase or sale of a security has involved victims who took, who tried to take, who divested themselves of, who tried to divest themselves of, or who maintained an ***ownership interest*** in financial instruments that fall within the relevant statutory definition." *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1066 (2014) (emphasis added).

To be sure, the label (*e.g.*, "equity" or "stock") is not dispositive of whether an offering is a security.  "[I]n searching for the meaning and scope of the word 'security' in the [Securities] Act, form should be disregarded for substance and the emphasis should be on economic reality." *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967); *see also United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 850 ("[T]he name given to an instrument is not dispositive"); *S.E.C. v. Zada*, 787 F.3d 375, 381 (6th Cir. 2015) ("economic realities" trump "monikers or labels").  As the Sixth Circuit has noted, "In focusing on the economic realities to distinguish securities transactions from commercial dealings, the [Supreme] Court has used a test which, in 'shorthand form' embodies the essential attributes that run through all of the Court's decisions defining a security.  The touchstone is (1) the presence of an investment (2) in a common venture (3) premised on a reasonable expectation

of profits (4) to be derived from the entrepreneurial or managerial efforts of others." *Am. Bank & Tr. Co. v. Wallace*, 702 F.2d 93, 96 (6th Cir. 1983).

In the FAC, instead of describing the Plan's economic realities, Plaintiffs rely entirely on labels. Without setting forth any basis for concluding that units in the Plan constitute actual ownership in ViSalus—or otherwise meet the definition of a security—Plaintiffs simply describe units in the Plan as ViSalus "common stock." [*E.g.*, FAC ¶¶ 324, 331 (seeking declaration that Plaintiffs and putative class are "immediate owners of 6% of the ViSalus common stock").] Yet, Plaintiffs simultaneously claim that they "have no idea what their investment actually purchased them" [*id.* ¶ 17], a fatal admission. *See Champions League, Inc. v. Woodard*, 224 F. Supp. 3d 317, 323 (S.D.N.Y. 2016) (dismissing securities fraud claim where plaintiff failed to adequately describe the securities).

Despite their use of the term "stock," Plaintiffs do not allege that they received an instrument purporting to represent issued "stock" in ViSalus. Rather, Plaintiffs claim to have received "Unit Certificates," which (correctly) stated that they had earned "Units in the Plan." [FAC ¶ 187.] But the economic realities of the "Units in the Plan" do not even approximate a real security. For one thing, there are no allegations that Plaintiffs "invested" in the Plan. Rather, Plaintiffs claim to have purchased the ViSalus business opportunity and product.[3] [*E.g.*, *id.*

---

[3] Again, the ViSalus Defendants do not understand the FAC to be alleging that the ViSalus business opportunity or products constitute a security.

¶¶ 167, 186, 206 (describing Plaintiffs' "investment" as buying ViSalus kits and product).]  By purchasing ViSalus kits and product, Plaintiffs became eligible to earn compensation from ViSalus, and by achieving certain metrics in the Compensation Plan—*i.e.*, earning the rank of "National Director"—Plaintiffs then qualified to receive units in the Plan, as a form of compensation.

With these "economic realities" in mind, units in the Plan are best characterized as "phantom stock."  "One of the most common employer equity arrangements is the so-called phantom stock plan.  The phantom stock plan gains its name from the fact that there is no actual transfer of shares of the employer's stock."  Types of Deferred Compensation Arrangements ¶ 5.05, 1999 WL 1031970, at *3 (noting that such plans are also referred to as "shadow stock" plans); 1 S Corporations Federal Taxation § 11:37 ("A phantom stock plan is a popular incentive arrangement for a closely held corporation.  Benefits under such a plan are determined not by the ownership of actual shares of corporate stock but by units the value of which are determined by reference to shares of stock.").

"Phantom stock is a right to receive an award with a value equal to the appreciation of a share of stock from the date the Phantom Stock is cashed out. . . . Phantom programs are based on 'phantom' or 'hypothetical' shares or units."  *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1327 (11th Cir. 1998); *see also* Types of Deferred Compensation Arrangements ¶ 5.05, 1999 WL 1031970, at *3 ("Under the typical phantom stock plan, the employee is credited with imaginary shares of

the employer's stock under the terms set forth in the plan.  Dividends paid with respect to the class of stock are then credited to the employee's account based on these imaginary or phantom shares.").  Such units do ***not*** convey ownership in the corporation, nor the right to vote, inspect books, or bring a derivative suit, and thus are "not the legal equivalent of a share of stock"—*i.e.*, they are not securities.[4] *Berkwitz v. Humphrey*, 163 F. Supp. 78, 89 (N.D. Ohio 1958); *see also Bunnell v. Netsch*, 2013 WL 2494987, at *7 n.3 (N.D. Tex. June 11, 2013) (quoting *Whitt* and adding that "phantom stock, is not actually 'stock'").

Taking the allegations of the Complaint as true, what Plaintiffs *bought* were ViSalus kits and product.  Purchasing a ViSalus "kit" or the "business opportunity" enrolls an individual as a promoter with ViSalus and qualifies him or her to earn money through ViSalus' compensation plan.  The kits also came with hundreds of dollars of product.  These purchases were sufficient for Plaintiffs to earn a rank in the ViSalus Compensation Plan that then qualified them for units in the *Plan*—not stock in, or ownership of, ViSalus.  [*E.g.*, FAC ¶ 96 (explaining the units in the Plan "will be converted into Units that will track and reflect the changing value of equity in ViSalus").]  Shareholders in the Plan were then entitled to receive an award that, in the aggregate, was to reflect the appreciation of 6% of ViSalus.  [*Id.*

---

[4] Significantly, Plaintiffs do not allege that their units in the Plan entitled them to any of the standard rights and privileges associated with actual stock ownership.

¶ 83.] As such, "phantom stock" is not a security, the existence of which is a prerequisite to a "securities" fraud claim.

### 2. Because Units Are Not Securities, Allegedly Fraudulent Statements Made to Plaintiffs Regarding The Plan Are Not "In Connection With" The Purchase Of A Security.

Count I is based on Rule 10b-5, which prohibits certain conduct "in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. Conduct is "in connection with the purchase or sale" of a security when it is material to a decision "to buy or to sell" the security. *See Chadbourne & Parke*, 134 S. Ct. at 1066 (interpreting "in connection with" as used in the Securities Litigation Uniform Standards Act ("SLUSA")); *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85-86 (2006) (meaning of "in connection with" in SLUSA is identical to meaning in Rule 10b-5). In *Chadbourne*, the plaintiffs alleged "(1) that they purchased uncovered securities (certificates of deposit that are not traded on any national exchange), but (2) that the defendants falsely told the victims that the uncovered securities were backed by covered securities." 134 S. Ct. at 1062. The plaintiffs did <u>not</u> allege that they actually bought or sold covered securities. *Id.* The Supreme Court held that, even though the investment in the uncovered security would ostensibly *result* in an investment in a covered security, the latter was one step removed, and thus the fraudulent conduct was not "in connection" with the purchase or sale of a covered security. *Id.* at 1062, 1071.

Here, Plaintiffs similarly allege (1) that they purchased ViSalus kits and product for themselves and others, and (2) that upon achieving a certain rank in the compensation plan, they received units in the Plan as a form of compensation. [*See* FAC ¶ 91 ("By personally reaching and maintaining leadership ranks of National Director and above, and helping your personally enrolled team do the same, you'll earn equity in the plan."); *id.* ¶¶ 171, 206, 218, 227, 240, 251, 260 (describing how Plaintiffs earned units in the Plan by "paying to enroll and purchase product" for themselves and others).]   Yet, like the plaintiffs in *Chadbourne*—who did not allege that they bought covered securities—Plaintiffs allege only that they bought the business opportunity and product; they do not allege that they "bought" units in the Plan.  Indeed, Plaintiffs concede that "[t]he company provided no means for a direct purchase, rather, buyers needed to sign up to be distributors (or could be existing distributors) and buy or recruit enough people who bought enough product in a given month to receive 'points' convertible into 'units.'"  [*Id.* ¶ 13; *see also id.* ¶ 88 (p. 48) ("You can't buy this equity"); *id.* ¶¶ 93, 99 ("The offering materials did not list a price per share and offered no meaningful way to determine how much the sellers were asking on a per share basis."); *id.* ¶ 112 ("[D]istributors 'qualified' for the equity.").][5]

---

[5] Notably, Plaintiffs do not define the putative class as "purchasers" of units in the Plan.  Rather (and despite elsewhere alleging that units could *not* be purchased), Plaintiffs cagily allege that the putative class consists of "those who purchased *or otherwise acquired* ViSalus securities."  [FAC ¶ 41 (emphasis added).]

Just as it did not matter that the *Chadbourne* plaintiffs' investment in the uncovered security would purportedly *result* in an investment in a covered security, it does not matter here that Plaintiffs' purchase of ViSalus kits and product *would result* in an investment in the Plan. *See Chadbourne*, 134 S. Ct. at 1062, 1071. Plaintiffs thus fail to allege illegal conduct "in connection with" the purchase or sale of a security, and their Rule 10b-5 claim fails *Id.*; *see also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749-55 (1975) (only an actual purchaser or seller of securities has standing to assert claims under Rule 10b-5); *Indah v. S.E.C.*, 661 F.3d 914, 922 (6th Cir. 2011) (plaintiffs failed to state Rule 10b-5 claim where they did not actually purchase or sell the securities at issue).

Counts II (Section 12 of Securities Act of 1933) and III (Section 509(2) of the MUSA) similarly fail because Plaintiffs are not "purchasers" of securities. *See* 15 U.S.C. § 77*l* (creating liability to "the person purchasing such security"); *Kellman v. ICS, Inc.*, 447 F.2d 1305, 1308 (6th Cir. 1971) ("[O]nly purchasers have standing to sue for violation of the 1933 Act."); *Ratner v. Sioux Nat. Gas Corp.*, 770 F.2d 512, 520 (5th Cir. 1985) ("Because appellees did not 'purchase' a security, they lacked standing to sue under . . . section 12(2) of the 1933 Act."); M.C.L. § 451.2509(2) ("A person is liable to the purchaser . . .").[6]

---

[6] M.C.L. § 451.2509(2) is nearly identical to Section 12 of the 1933 Act. Where the factual bases for a claim under the MUSA and federal securities law are identical, the MUSA claim rises or falls with the federal claim. *See USM Holdings Inc v Simon*, 2016 WL 4396061, at *15 (E.D. Mich. Aug. 18, 2016) (stating that "a

**B.** **The 10b-5(b) Claims Fail Against the ViSalus Defendants Because Plaintiffs Do Not Plead Reliance On Specific Misrepresentations Or Omissions By Each Of The Defendants.**

"To state a claim under Rule 10b-5(b), 'a plaintiff must plead and prove: (1) a material misrepresentation or omission by the defendant, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, and (5) loss causation.'" *Kerrigan v. ViSalus, Inc.*, 2016 WL 892804, at *12 (E.D. Mich. Mar. 9, 2016) ("*Kerrigan II*") (quoting *Stoneridge Inv. Partners, LLC v Scientific-Atlanta, Inc.*, 128 S. Ct. 761 (2008)).  Rule 9(b) further requires the complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008).  Finally, the Private Securities Litigation Reform Act ("PSLRA") requires a plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.*

Plaintiffs' Rule 10b-5(b) claims fail because Plaintiffs have not adequately

---

securities fraud claim under the MUSA is nearly identical to the corresponding federal securities fraud claim" and dismissing fraud claims under MUSA where Plaintiff failed to state a claim under the corollary federal cause of action).

pled reliance on specific statements or omissions by the ViSalus Defendants. Contrary to Plaintiffs' naked assertion, the *Affiliate Ute* presumption of reliance is unavailable in this case.  [FAC ¶ 48 (citing *Affiliated Ute Citizens of the State of Utah v. U.S.*, 406 U.S. 128 (1972).]  The *Affiliated Ute* presumption only arises when a fiduciary or other relationship of trust and confidence exists.  *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 549 (6th Cir. 2012); *see also Cavalier Carpets, Inc. v. Caylor*, 746 F.2d 749, 756 (11th Cir. 1984).  Here, there are no allegations of such a relationship between the ViSalus Defendants and Plaintiffs.  Further, the *Affiliated Ute* presumption only applies in cases primarily involving the omission of material facts rather than misstatements.  *See Cavalier*, 746 F.2d at 756; *Joseph v. Wiles*, 223 F.3d 1155, 1162 (10th Cir. 2000).  Yet, allegations of affirmative misstatements form the basis of—and dominate—the FAC, barring the *Ute* presumption.  *See In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 220-21 (D.C. Cir. 2010) (rejecting contention that action primarily relied on omissions where complaint focused on claim that defendant certified as accurate documents which omitted company was a Ponzi scheme); *see also Cavalier*, 746 F.2d at 757.

Plaintiffs, therefore, must plead actual reliance—but they have failed to do so.  Throughout the FAC, Plaintiffs identify several specific misstatements by Defendants on a "Webinar."  [FAC ¶¶ 118-19.]  No Plaintiff, however, alleges that he or she actually viewed the "Webinar" and relied on specific statements (or omissions) therein.  Plaintiffs also attempt to base their 10b-5(b) claims on

12

statements from Facebook posts, "Vision Calls," "the "ViSalus Equity page,"

meetings in Michigan, and various videos posted on YouTube, or elsewhere.[7]  [*Id.*

¶¶ 86-90, 126-27, 133-35, 136-37; 142-43.]  By failing to allege that any Plaintiff

received, read, listened to, viewed, heard, and then relied upon <u>any</u> of these

specific statements (or omissions), Plaintiffs fail to plead reliance.[8]  *See Kerrigan*

*II*, 2016 WL 892804, at \*12 (dismissing 10b-5(b) claim where the "Complaint

[did] not contain any allegations that Plaintiffs actually saw or read either the

compensation plan or the ViSalus advertisements that form the entirety of

Plaintiffs' 10b-5(b) claim"); *see also In re Suprema Specialties, Inc. Sec. Litig*., 438

F.3d 256, 283-84 (3d Cir. 2006) (affirming dismissal of Section 18 claims where

Plaintiffs failed "to plead facts probative of their actual reliance on any specific

---

[7] Plaintiffs do not describe <u>any</u> specific fraudulent statement (or omission) by Defendant Goergen, much less any statement Plaintiffs heard and relied on when attempting to earn units in the Plan.  In fact, the FAC highlights this deficiency, alleging that "[e]ach of the Defendants *with the exception of Goergen* made statements or ratified the making of statements relating to the future value of the equity offered."  [FAC ¶ 301 (emphasis added).]

[8] Byrd amorphously alleges that "Owens encouraged [her] to visit the ViSalus websites http://visalus.com/equity and http://equity.vi.com" (FAC ¶ 169), but, notably, she does not allege that she actually visited the sites and relied on their content.  Similarly, White claims she "viewed a video on ViSalus equity," without identifying who appeared in it, who produced it, or alleging that she relied on it. [*Id.* ¶ 212.]  McWhorter alleges Owens showed him "a video about the ViSalus business opportunity," but does not allege that ViSalus produced it or that any Defendant appeared in it, much less allege that he relied on it when obtaining units in the Plan.  [*Id.* ¶¶ 235, 237.]  Herl refers to a representation on "the ViSalus videos on its website" that units were available only until December 2016, but does not allege reliance on those "videos," provide any additional details about the videos, or explain how that representation was false when made.  [*Id.* ¶ 226.]

false statements" and thus failed "to show the requisite causal nexus between their purchase of securities and specific statements contained in the SEC filings").

Other statements attributed to the ViSalus Defendants were made *after* Plaintiffs obtained units in the Plan, and thus Plaintiffs could not have relied on them in connection with investing in the Plan.  [FAC ¶ 194 (referring to statements by Mrs. Sarnicola at an event in April 2017); ¶ 230 (referring to the "general" message of "shareholder calls" featuring Mr. Sarnicola and Mallen, which Herl listened to after her "run to equity").]  Plaintiffs also neglect to explain how or why other statements were false, or otherwise explain how the statements induced them to do anything.  [*E.g.*, *id.* ¶ 181 (alleging that the Sarnicolas and Mallen "played up the church and spirituality angle of their weight loss mission"); ¶ 258 ("Mallen, Ashley Sarnicola, and/or Nick Sarnicola . . . would talk about how much money they had made through ViSalus.").].

To the extent Plaintiffs allege they attended events or watched videos "which featured" certain Defendants, Plaintiffs fail to specifically identify *who* said *what* or provide other required details such as *when* and *where*.[9]  In several instances, failing to allege the "when" means failing to allege reliance.  [*E.g.*, *id.* ¶ 163 (alleging Byrd "had seen videos of [the] March to Equity and other ViSalus

---

[9] The exception is Watts' allegations against Defendant Mallen and ViSalus.  [FAC ¶¶ 32, 40, 201.]  However, as previously discussed, those claims still fail because Plaintiffs have not plausibly alleged misrepresentations or omissions in connection with the purchase or sale of a security.

presentations" without alleging *when* she did so or that she relied upon specific statements therein).] Plaintiffs also improperly lump several Defendants together. [*E.g.*, *id.* ¶ 164 (describing generally what "Mallen, N. Sarnicola, and Owens" said at an event); ¶ 176 ("N. Sarnicola and Mallen again discussed the Plan."); ¶¶ 181, 215 (alleging Mallen and the Sarnicolas were "featured" at meetings at Owens' church, without alleging when, or what, each Defendant said about the Plan), ¶ 216 (referring to "[t]he statements [White] heard from the Defendants"); ¶¶ 238, 258 (lumping together general statements by "Mallen, Ashley Sarnicola, and/or Nick Sarnicola," without alleging when the statements were made or who said what).[10] The Court identified a similar problem in *Kerrigan*. *See Kerrigan*, 2015 WL 3679266, at *15-16 ("Plaintiffs have engaged in impermissible group pleading that precludes the Court from conducting the necessary individualized inquiry into each defendant's alleged liability.").

Plaintiffs even fail to differentiate among *themselves*. For example, Plaintiffs allege that Mr. Sarnicola made fraudulent statements at an event "in front of several hundred distributors including some of the named Plaintiffs," but do not specify *which* Plaintiffs were present or otherwise connect his statements with any

---

[10] For this same reason, Plaintiffs inadequately allege scienter as to Reynolds. The PSLRA requires Plaintiffs to "state with particularity facts giving rise to a strong inference that the defendants acted with the required state of mind." *Kerrigan II*, 2016 WL 892801, at *12 (quoting 15 U.S.C. § 78u-4(b)(2)). But rather than pleading specific facts about his scienter, Plaintiffs lump him with Defendant Owens and make conclusory statements as to both. [FAC ¶ 275 (p. 199-200).]

particular Plaintiff's purchase or sale of a security.   [FAC ¶ 144.]   Likewise, Plaintiffs allege generally that they "were supplied and saw the offering on the ViSalus page and the videos and statements described including the Facebook posts and other social media statements intended to be spread by the Defendants," without identifying with any particularly whatsoever *which* Plaintiffs viewed *what* material and *when*.   [*Id.* ¶ 277.]   *See, e.g.*, *In re Boeing Sec. Litig.*, 40 F.Supp.2d 1160, 1166 (W.D. Wash. 1998) ("[A] plaintiff must attribute the misleading statements upon on [sic] which his claim is based to a particular defendant.").

Plaintiffs theorize that the ViSalus Defendants can be liable under Rule 10b-5(b) for "ratifying" the statements of others.   [*E.g.*, *id.* ¶ 273 (p. 184) (alleging that Goergen is liable under Rule 10b-5(b) for "[a]ll statements attributed to every other Defendant").]   The Supreme Court's ruling in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), forecloses this argument.   In *Janus*, the Supreme Court held that only the "maker" of a statement can be liable under Rule 10b-5(b).   *Id.* at 142-43; *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 175-76 (1994) (holding that there is no "aiding and abetting" or "indirect" liability under Rule 10b-5).   The Court explained that "to make any statement," is the equivalent of "to state." *Janus*, 564 U.S. at 142; *see also In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1270 (11th Cir. 2016); *Fulton County v. MGIC Inv. Corp.*, 675 F.3d 1047, 1051-52 (7th Cir. 2012); *Kerrigan II*, 2016 WL 892804, at *14 (only the "maker" of the

statement in question can be liable under Rule 10b-5(b)).   Under *Janus*, to the extent Plaintiffs sufficiently plead any specific misrepresentations or omissions by an individual person, that person—and only that person—is the "maker" of the statement.   Plaintiffs' "ratification" theory fails.   Because Plaintiffs have not plead specific misrepresentations or omissions by each ViSalus Defendant on which they actually relied, Plaintiffs' 10b-5(b) claim should be dismissed as to all ViSalus Defendants (except for Watts' claim as against Defendants Mallen and ViSalus).[11]

**C.   Plaintiffs' Scheme Liability Claims Under Rule 10b-5(a)/(c) (Count I) Fail As To All Defendants Because Plaintiffs Have Not Pled Separate Fraudulent Acts.**

Rule 10b-5(a) and (c) make it illegal "to employ any device, scheme, or artifice to defraud" and "to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."   17 CFR § 240.10b-5.   "To state a claim based on conduct that violates Rule 10b-5(a) and (c), a plaintiff must allege that a defendant (1) committed a deceptive or manipulative act, (2) with scienter, that (3) the act affected the market for securities or was otherwise in connection with their purchase or sale, and that (4) defendants' actions caused the plaintiffs' injuries."   *Kerrigan II*, 2016 WL 892804, at *15 (citation omitted).   "[B]ecause

---

[11] Plaintiffs' allegation that Defendants Owens is an agent of ViSalus is wholly conclusory.   [FAC ¶ 40.]   The FAC contains no factual allegations supporting the legal conclusion of agency (or employment) such that Owens' liability under any claim in the FAC should be imputed to ViSalus.   And, notably, Plaintiffs elsewhere allege that Owens is an independent promoter.   [*Id.* ¶ 38.]

scheme liability claims 'sound in fraud,' a plaintiff must also satisfy the pleading requirements of Rule 9(b) by 'specifying what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and what effect the scheme had on investors in the securities at issue.'" *Id.*   "[A] plaintiff must identify an allegedly 'deceptive or manipulative act' by the defendant beyond making a misstatement or omission (which is prohibited under Rule 10b5-(b)). *Id.* (citing *Benzon v. Morgan Stanley Distrib., Inc.*, 420 F.3d 598, 610 (6th Cir. 2005) ("Rules 10b-5(a) and (c) encompass conduct beyond disclosure violations.")); *see also In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*, 553 F. Supp. 2d 902, 909 (S.D. Ohio 2008) (for scheme liability under Rule 10b-5(a)/(c), "a defendant must engage in conduct that is in itself deceptive, not simply engage in non-deceptive conduct that supports an overall deceptive scheme"); *In re Royal Dutch/Shell Transp.*, 2006 WL 2355402, at *8 (D.N.J. Aug. 14, 2006) (alleged conduct must be *separate and apart* from alleged misrepresentations and omissions; otherwise, a plaintiff could end-run the PSLRA pleading requirements); *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) ("Scheme liability . . . hinges on the performance of an inherently deceptive act that is distinct from an alleged misstatement.").

In *Kerrigan*, the plaintiffs alleged that the defendants "created, implemented, and operated a pyramid scheme"—conduct the Court deemed "inherently fraudulent wholly apart from any allegedly-misleading statements." *Kerrigan II*,

2016 WL 892804, at *16.  The plaintiffs, in turn, alleged that they were injured by the pyramid scheme.  *Id.*  By contrast, the Plaintiffs here do not allege any separate "act, practice, or course of business which operates as a fraud or deceit," much less describe with particularity how each Defendant engaged in such conduct.  Rather, Plaintiffs allege that the scheme was deceiving Plaintiffs regarding their interests in the Plan—and the specific conduct alleged in furtherance of that scheme was making misrepresentations and/or omissions.  [FAC ¶ 272 (setting forth alleged material misrepresentations and omissions made "in connection with the offer to sell the Plan.").]  Plaintiffs have not alleged that the ViSalus Defendants engaged in any specific act (other than the alleged misrepresentations or omissions) that, standing alone, is inherently deceptive or that deceived or damaged Plaintiffs.  Thus, the 10b-5(a) and (c) claims fail as to all ViSalus Defendants.

### D.   The Section 12 Claim (Count II) Fails As To All Defendants Except ViSalus Because Plaintiffs Do Not Adequately Allege Direct Solicitation.

In Count II, Plaintiffs allege that all Defendants (except Reynolds and Mrs. Sarnicola) violated Section 12(1) and 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*.  Section 12(1) creates a private cause of action for a purchaser of unregistered securities.  *See* 15 U.S.C. § 77*l*(a)(1); 15 U.S.C. § 77e.  Section 12(2) provides that any person who

> offers or sells a security . . . which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which

they were made, not misleading (the purchaser not knowing of such untruth or omission) . . . shall be liable . . . to the person purchasing such security from him.

15 U.S.C.A. § 77l.  For liability to attach under either subsection of Section 12, "a defendant must either (1) pass title, or other interest in the security, to the buyer for value, or (2) successfully solicit the purchase of a security."  *See Kerrigan II*, 2016 WL 892804, at \*17 (quoting *Pinter v. Dahl*, 486 U.S. 622, 642, 649 (1988) and *Smith v. Am. Nat'l Bank & Trust Co.*, 982 F.2d 936, 942 (6th Cir. 1992)).  "Thus, being merely a 'substantial factor' in causing the sale is not sufficient in itself to render a defendant liable if the Defendant did not solicit the ultimate purchase." *Id.* (quoting *Pinter*, 486 U.S. at 654).

As explained above, units in the Plan are not securities, and the allegedly fraudulent statements therefore were not made in connection with the purchase of a security.  Moreover, ViSalus is the only Defendant alleged to have passed any interest in a security to Plaintiffs.  Thus, as this Court held in *Kerrigan*, the remaining individual Defendants on this claim can be liable under Section 12 only if they "solicited" Plaintiffs' purchase of securities.  *Id.*  "To count as 'solicitation,' the seller must, at a minimum, directly communicate with the buyer."  *Id.*

Here, the FAC does not allege any direct communication whatsoever between Blair, Goergen, or Craig and any Plaintiff.  Although Plaintiffs (as a group) allege they attended meetings "which featured" Mallen and the Sarnicolas, they do not allege that Mallen and the Sarnicolas directly participated in each

20

Plaintiff's purchase of the business opportunity and product.  *See, e.g.*, *Pullins v. Klimley*, 2008 WL 85871, at *16 (S.D. Ohio Jan. 7, 2008) ("While Brooks may have made statements regarding the financial status of VWE, none of the statements identified demonstrate direct and active participation in the solicitation of the immediate sale of any Debenture Note to Plaintiffs.").  To the contrary, the FAC alleges it was Owens, Deb Johnson, and other *Plaintiffs* who solicited and participated in each Plaintiff's investment.  [*See* FAC ¶¶ 161, 165-67, 169 (Byrd bought kits and product based on urging by Johnson and Owens); ¶¶ 202-03 (Owens and Byrd solicited purchases by Watts); ¶¶ 215, 217-18 (Owens "persuaded" White to earn units); ¶¶ 144-45 (Owens and Johnson solicited Herl's purchases); ¶ 235 (Byrd and Owens convinced McWhorter to earn units); ¶¶ 247-48 (a person recruited by Owens and Johnson solicited Harris' purchases); ¶¶ 255, 258-59 (Owens and Johnson solicited Bates' purchases).]

Because Plaintiffs do not allege that any of the ViSalus Defendants directly communicated with them and personally encouraged their instant investment in the Plan, Plaintiffs' Section 12 claims fail as to everyone except ViSalus.  *See Kerrigan II*, 2016 WL 892804, at *17 ("while Plaintiffs allege[d] that the certain individual Defendants engaged in solicitation activities, they [did] not allege that they actually saw and/or were aware of the specific activities by the individual Defendants," and their Section 12(2) claims thus failed).

**E.**   **The MUSA Section 509(2) Claim (Count III) Fails As To All Defendants Except ViSalus Because Plaintiffs Do Not Adequately Allege Direct Solicitation.**

For Count III, Plaintiffs allege liability against all Defendants under the MUSA analog to Section 12(1)—M.C.L. § 451.2509(2).   [*See* FAC ¶¶ 288-93 (alleging failure to file a registration statement).]   When determining whether a defendant is a "seller" of security for purposes of Section 509(2), this Court looks to federal cases delineating a "statutory seller" in the Section 12 context.   *See Haase v GunnAllen Fin, Inc*, 2011 WL 768045, at *7 (E.D. Mich. Feb. 28, 2011) (citing *Smith*, 982 F.2d at 942).   Thus, Count III fails as to all ViSalus Defendants except ViSalus for the same reasons that Count II fails.[12]   *See USM Holdings*, 2016 WL 4396061, at *15 (dismissing fraud claims under MUSA where Plaintiff failed to state a claim under federal analog).

**F.**   **Plaintiffs' Investment Adviser Claim Under MUSA Section 509 (5)-(6) (Count V) Fails.**

For Count V, Plaintiffs assert claims under provisions of Michigan law that create liability for an "investment adviser," an "investment adviser representative that provides investment advice for compensation," or "[a] person that receives, directly or indirectly, any consideration for providing investment advice."   *See*

---

[12] As noted *supra* note 2, Count IV appears to seek relief under MUSA Section 509(3), which creates liability against a purchaser of a security.  But Plaintiffs do not allege they sold securities to Defendants.  Presumably, Plaintiffs meant to cite Section 509(2), the state analog to Section 12(2).  [*See* FAC ¶ 302.]  If so, the claim still fails except as to ViSalus, because ViSalus is the only alleged "seller."

M.C.L. § 451.2509(5)-(6).[13]  These provisions give rise to "an action to recover the consideration paid for the advice." *Id.*  But the claims fail for at least two reasons. <u>First</u>, no Defendant is an "investment adviser" or "investment adviser representative" under the MUSA.  <u>Second</u>, Plaintiffs do not allege they paid consideration to any Defendant in exchange for investment advice.[14]

> The Act defines "investment adviser" as follows:
>
> "Investment adviser" means a person that, for compensation, ***engages in the business of advising others***, either directly or through publications or writings, as to the value of securities or the advisability of investing in, purchasing, or selling securities ***or that, for compensation and as a part of a regular business, issues or promulgates analyses or reports concerning securities***.
>
> The term includes a financial planner or other person that, as an integral component of other financially related services, provides investment advice to others for compensation as part of a business or that holds itself out as providing investment advice to others for compensation.

M.C.L. § 451.2102a(e) (emphasis added).[15]  Here, the FAC does not plausibly allege that any Defendant "engages in the business" of providing securities advice or "as part of a regular business, issues or promulgates analyses or reports

---

[13] Count V also refers to M.C.L. § 451.2502 and M.C.L. § 451.2403(1).  [FAC p. 212.]  As noted above, M.C.L. § 451.2502 does not create a private right of action.  [*See supra* note 2.]  A violation of M.C.L. § 451.2403(1) gives rise to a civil action pursuant to M.C.L. § 451.2509(5).

[14] Count V further fails because investment adviser liability requires the involvement of a "security."  *See* M.C.L. § 451.2102a(e); *Mercantile Bank of Michigan v. CLMIA, LLC*, 2015 WL 630259, at *9 (Mich. Ct. App. Feb. 12, 2015).

[15] An "investment adviser representative" is "employed by or associated with an investment adviser or federal covered investment adviser."  M.C.L. § 451.2102a(f).

concerning securities."  *See* Applicability of the Investment Advisers Act,

Investment Advisers Act Release No. 1092, 52 Fed. Reg. 38400, 38402 (Oct. 16,

1987) (a person is considered "'in the business' of providing advice if the person:

(i) holds himself out as an investment adviser or as one who provides investment

advice, (ii) receives any separate or additional compensation that represents a

clearly definable charge for providing advice about securities . . . or (iii) on

anything other than rare, isolated and non-periodic instances, provides specific

investment advice.").[16]  The definition suggests a formal business relationship

between an adviser and a client.  *See SEC v. Capital Gains Res. Bureau, Inc.*, 375

U.S. 180, 191-92 (1963) (explaining that the Investment Advisers Act of 1940

"reflects a congressional recognition of the delicate fiduciary nature of an

investment advisory relationship").  Plaintiffs in this case do not allege any

semblance of a formal business relationship between themselves and Defendants.

The Michigan Court of Appeals has explained that an "investment adviser"

receives "consideration principally for investment advice."  *See People v. Cook*,

279 N.W.2d 579, 587 & n.6 (Mich. Ct. App. 1979).  When determining whether a

person is an "investment adviser," the "essential distinction" is between

"compensation for advice itself and compensation for services of another character

---

[16] M.C.L. § 451.2102a incorporates the definition of "investment adviser" set forth in the Federal Investment Advisers Act of 1940.  *See* 15 U.S.C.A. § 80b-2(11); *see also* M.C.L. § 451.2102a(e)(vii).

24

to which advice is merely incidental." *Id.* at 587 (citation omitted). Thus, a defendant is not an "investment adviser" merely because he has "received consideration 'as a result of' investment advice—the compensation must be "primarily for the advice." *Id.* (defendant not an "investment adviser" where he did not receive "consideration primarily for investment counsel," "never billed . . . for advice," and no part of payment made was "earmark[ed] . . . as payment for advice"); *see also Roman v. Briggs*, 2001 WL 721331, at *2 (Mich. Ct. App. Feb. 27, 2001) (defendants not "investment advisers" under MUSA where consideration received was incidental to, and not payment for, investment advice).

Here, no Plaintiff alleges that he or she paid for investment advice. And the FAC contain no facts supporting that that any Defendant was "in the business of," or received consideration for, providing investment advice.[17] Thus, Plaintiff's investment adviser claims in Count V should be dismissed.

G. **The Secondary Liability Claim Under MUSA Section 509(7) (Count V) Fails.**

Count V also asserts secondary (aiding-and-abetting) liability against all Defendants under M.C.L. § 451.2509(7). That provision creates joint and several liability for a person who (a) "directly or indirectly controls a person liable under subsections (2) to (6)"; (b) is a managing partner, executive officer, or director of a

---

[17] Plaintiffs' Section 509(6) claim, which is a scheme liability claim in the context of "providing investment advice," further fails because Plaintiffs do not sufficiently plead separate fraudulent conduct. [*See supra* § II.C.]

person liable under subsections (2) to (6)"; (c) is an employee of or associated with a person liable under subsections (2) to (6) and who materially aids the conduct giving rise to the liability"; or (d) "is a broker-dealer, agent, investment adviser, or investment adviser representative that materially aids the conduct giving rise to the liability under subsections (2) to (6)." *Id.*

Taking a shotgun approach to these four categories of secondary liability, Plaintiffs allege generally that "[e]ach Defendant, including Goergen, is liable jointly or severally to the Plaintiffs and the Class pursuant to subsections (a)-(d) of Section 509(7)." [FAC ¶ 314.] In so doing, Plaintiffs fail to specify (1) which of Section 509 subsections (2) to (6) gives rise to the primary offense that each Defendant allegedly directed or materially aided; (2) the identity of the primary violator as related to each secondary violator; and (3) which of the four methods under Section 509(7) each Defendant used to direct or materially aid each primary violation. Plaintiffs thus leave Defendants guessing among hundreds of options.[18]

In any event, liability under these provisions depends upon an initial finding of primary liability by the controlled person or seller. *See Haase*, 2011 WL

---

[18] Although Paragraph 314 of the FAC provides some color as to Plaintiffs' theory of Goergen's secondary liability, Plaintiffs still do not include facts sufficient to satisfy Rules 8 or 12(b)(6). For example, the FAC includes no facts whatsoever to support the conclusory allegation that "Goergen directly or indirectly controlled Defendants Reynolds and Owens." Nor does the FAC identify the primary violation by Reynolds or Owens.

768045, at *4.  Plaintiffs have failed to state a claim for primary liability under MUSA Section 509(2) through (6):

- Subsection (2) is a cause of action against the "seller" of a security and parallels a Section 12 claim.  As stated above, units in the Plan are not securities, and Plaintiffs did not purchase them.
- Subsection (3) is a cause of action against the purchaser of a security and is inapplicable to this case.
- Subsection (4) is a cause of action against a "broker-dealer" by his "customer" and is inapplicable to this case.
- Subsection (5) is a cause of action against an "investment adviser" and is inapplicable to this case.
- Subsection (6) is a cause of action against a person who receives "consideration for providing investment advice" and is inapplicable to this case.

Thus, the 509(7) claims fails as to all Defendants.

### H.  The Conversion Claim (Count VI) Fails.

In Count VI, Plaintiffs bring claims for common law and statutory conversion against ViSalus, Mr. Sarnicola, Mallen, and Blair.  The clams fail for at least three reasons.  First, Plaintiffs have not alleged conduct inconsistent with their rights to the allegedly-converted property (their money).  Second, as to Mr. Sarnicola, Mallen, and Blair, Plaintiffs fail to allege that each Defendant received "specific money" that they paid to ViSalus.  Third, for statutory conversion against Mr. Sarnicola, Mallen, and Blair, Plaintiffs fail to plead the required element that money was converted for each Defendant's "own use."

In Michigan, claims for common-law and statutory conversion require "conduct inconsistent with the owner's property rights."  *Aroma Wines & Equip,*

*Inc. v. Columbian Distrib. Servs., Inc.*, 871 N.W.2d 136, 145 (Mich. 2015). Taking Plaintiffs' allegations as true, the money they paid ViSalus entitled them to the ViSalus business opportunity, product, and units in the Plan.  Plaintiffs do not allege that ViSalus failed to provide each of these items to Plaintiffs.   In other words, Plaintiffs got what they paid for.   Thus, they fail to allege conduct inconsistent with their rights.  [*E.g.*, FAC ¶¶ 187, 207, 231.]

Further, "to state a claim for conversion of money, a plaintiff must allege that the defendant had an obligation to return certain specific money entrusted to his care." *Kerrigan I*, 112 F. Supp. 3d at 615-16.  Plaintiffs' conversion claims fail on this basis as to Mr. Sarnicola, Mallen, and Blair, because Plaintiffs do not, and cannot, allege that any Defendant besides ViSalus received the "specific money" that Plaintiffs paid to ViSalus.  As the Court held in *Kerrigan I*, it is insufficient to allege that ViSalus ultimately distributed money to each of the ViSalus Defendants, as Plaintiffs attempt to do here.  *See id.* at 616.

Finally, "the separate statutory cause of action for conversion 'to the other person's own use' under MCL 600.2919a(1)(a) requires a showing that the defendant employed the converted property for some purpose personal to the defendant's interests." *Aroma*, 871 N.W.2d at 138; *see also Sutter v. Ocwen Loan Servicing, LLC*, 2016 WL 3003346 at *4 (Mich. App. May 24, 2016) (statutory conversion claim failed where "plaintiffs did not assert that defendant employed [plaintiffs' personal property] for some purpose personal to defendant's interests");

28

*Williams v. Ocwen Loan Servicing, LLC*, 2016 WL 5390861, at *5 (E.D. Mich. Sept. 27, 2016) (same).

Here, Plaintiffs have not even alleged that Mr. Sarnicola, Mallen, or Blair converted Plaintiffs' money "for their own use," much less provide facts explaining how each did so.  *See Aroma*, 871 N.W.2d at 138 (plaintiffs must prove the defendant "employed the converted property for some purpose personal to [his] interests").  To the contrary, Plaintiffs allege that the Plan was an effort to keep ViSalus afloat, without alleging that anyone profited personally from Plaintiffs' participation in the Plan.  [FAC ¶ 81 ("The goal of the Plan was to raise capital to cover the company's immediate and urgent cash needs.").]  This deficiency is grounds for dismissing the claim as to all ViSalus Defendants except ViSalus.  *See Int'l Indus. Contracting Corp. v. Sofir Italia s.r.l.*, 2017 WL 3499899, at *10 (E.D. Mich. Aug. 16, 2017) ("Merely stating that Defendants have exercised control over or used the funds for their 'own use' without any further factual enhancement is precisely the type of formulaic recitation of an element that is insufficient to survive Rule 12(b)(6) scrutiny.").

## III.   <u>CONCLUSION</u>

For the reasons stated herein, the ViSalus Defendants respectfully request that the Court dismiss the FAC in its entirety.  If the Court determines that units in the Plan constitute securities, and that the allegedly fraudulent statements were made in connection with the purchase of securities, Plaintiffs' claims should

nonetheless be dismissed as follows:  Count I (10b-5(a)/(c)) as to all ViSalus Defendants; Count I (10b-5(b)) as to all ViSalus Defendants except Mallen and ViSalus (as alleged by Plaintiff Watts only); Count II (Section 12) as to all ViSalus Defendants except ViSalus; Count III (Section 509(2)) as to all ViSalus Defendants except ViSalus; Count IV (MUSA Securities Fraud) as to all ViSalus Defendants; Count V (Investment Adviser Liability) as to all ViSalus Defendants; Count VI (Conversion) as to all ViSalus Defendants.

Respectfully submitted,

By:  /s/  Nicholas B. Gorga
Attorney for the ViSalus Defendants

QUARLES & BRADY LLP
Kevin D. Quigley (AZ Bar #015972)
Edward A. Salanga (AZ Bar #020654)
Brian A. Howie (AZ Bar #026021)
Michael S. Catlett (AZ Bar #025238)
*All Admitted to Practice in ED MI*
2 North Central Avenue
Renaissance One
Phoenix, AZ 85004
Telephone Number: (602) 229.5200
Fax Number: (602) 229.5690
E-Mail: kevin.quigley@quarles.com
edward.salanga@quarles.com
brian.howie@quarles.com
michael.catlett@quarles.com

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Nicholas B. Gorga (P72297)
Andrew W. Clark (P79165)
660 Woodward Avenue
2290 First National Building
Detroit, MI  48226-3506
Telephone Number: (313) 465-7640
Fax Number: (313) 465-7641
E-Mail: ngorga@honigman.com
aclark@honigman.com

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule 7.1, I certify that I made contact with counsel for Plaintiffs, Andrew Kochanowski of Sommers Schwartz, P.C., via email on October 25, 2017.  That same day, at Mr. Kochanowski's request, I also provided a letter summarizing the ViSalus Defendants' arguments for dismissal. Concurrence on this Motion was not granted.

By:  /s/ Michael S. Catlett
Attorney for the ViSalus Defendants

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 27, 2017, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

By:   /s/   Nicholas B. Gorga
Attorney for the ViSalus Defendants

QUARLES & BRADY LLP

Kevin D. Quigley (AZ Bar #015972)
Edward A. Salanga (AZ Bar #020654)
Brian A. Howie (AZ Bar #026021)
Michael S. Catlett (AZ Bar #025238)
*All Admitted to Practice in ED MI*
One Renaissance Square
2 North Central Avenue
Phoenix, AZ 85004
Telephone Number: (602) 229.5200
kevin.quigley@quarles.com
edward.salanga@quarles.com
brian.howie@quarles.com
michael.catlett@quarles.com

HONIGMAN MILLER SCHWARTZ AND COHN LLP

Nicholas B. Gorga (P72297)
Andrew W. Clark (P79165)
660 Woodward Avenue
2290 First National Building
Detroit, MI  48226-3506
Telephone Number: (313) 465-7640
Fax Number: (313) 465-7641
ngorga@honigman.com
aclark@honigman.com