# EXHIBIT 1

THEUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC J. HARRIS, SR., individually, and on behalf of
all others similarly situated, and CAPRECE BYRD,
BRYANT WATTS, RENAE WHITE, LAURA HERL,
DR. FRANK McWHORTER, ERIC J. HARRIS, SR.
and CONNIE BATES, individually on their own
behalf,

       Plaintiffs,

v.

VISALUS, INC., a corporation, et al.,

       Defendants.

Case No. 17-cv-12626
Hon. Matthew F. Leitman

## SETTLEMENT AGREEMENT

Subject to the Court's approval, Plaintiffs Caprece Byrd, Bryant Watts, Renae White, Laura Herl, Dr. Frank McWhorter, and Connie Bates acting on their own behalves ("Individual Plaintiffs"); and Plaintiff Eric J. Harris, Sr., acting individually and on behalf of the Settlement Class ("Named Plaintiff"); and ViSalus, Inc. ("ViSalus"); and all other Defendants defined below, enter into this Settlement Agreement (the "Agreement") as of this 15th day of May, 2019. Plaintiffs and Defendants are referred to herein as the "Parties," and each may individually be referred to herein as a "Party."

## I.    RECITALS

**A.**    Plaintiffs filed a Complaint against the Defendants on August 10, 2017. The Complaint was subsequently amended on September 29, 2017 (the First Amended Complaint), May 4, 2018 (the Second Amended Complaint), and April 16, 2019 (the Third Amended Complaint).  ViSalus and certain other Defendants filed motions to dismiss the original Complaint,

and the First and Second Amended Complaints, and they withdrew, without prejudice, their motions to dismiss the Second Amended Complaint. In connection with this settlement, the Parties stipulated to the filing of the Third Amended Complaint.

B.     The District Court issued opinions on Defendants' motions to dismiss certain of Plaintiffs' complaints, granting in part and denying in part these motions. Since 2015, the parties' attorneys have been engaged in fact and expert discovery in the companion case *Kerrigan et al. v. ViSalus et al.*, Case No. 14-cv-12693 (the "Kerrigan Action"), also pending before Judge Leitman in the United States District Court for the Eastern District of Michigan, and the facts and circumstances of this case are well-known by all involved.

C.     The Parties have engaged in arms-length settlement negotiations conducted with the assistance of a mediator, Mr. Thomas G. McNeill. These sessions included three full-day mediation sessions. The first two sessions were held in Detroit, Michigan in 2017 and 2018, and the third session was held in New York, New York in October 2018. The parties have also engaged in multiple telephonic discussions with the mediator and counsel for the Parties and their insurers in 2018 and 2019.

D.     At the conclusion of these extended negotiations, the Parties executed a Memorandum of Understanding setting forth the basic terms of a settlement, but requiring the negotiation and execution of a written settlement agreement, which is subject to approval by the Court.

E.     Plaintiffs believe the claims asserted have merit. However, Plaintiffs recognize the risks, expense, and further delay of prosecuting this matter through trial, post-trial proceedings, and appeals. Plaintiffs and Class Counsel have considered: (i) the risks posed by Defendants' pending motion to dismiss; (ii) the difficulties in proving the elements of Plaintiffs' claims and the alleged class-wide damages; (iii) the risk that any favorable judgment might be

reversed on appeal; and (iv) the challenges of collecting on any favorable judgment. The terms of this Agreement confer substantial benefits upon the Settlement Class. The Named Plaintiff and Class Counsel have determined that the Settlement is fair, reasonable, adequate, and in the best interests of Plaintiff and the Settlement Class.

F.     Defendants maintain that they violated no law, they have done nothing wrong, and they have several meritorious defenses to the claims.  However, Defendants recognize the risks and uncertainties inherent in litigation, the significant expenses associated with defending a class action, the costs of trial and later proceedings, and the continued disruption to their business operations arising out of burdensome and protracted litigation.  Defendants believe that the Settlement set forth in this Agreement is likewise in their best interests.

G.     The Parties jointly intend to submit this Settlement for approval of the District Court in which counsel prosecuting the litigation on behalf of Named Plaintiff shall seek to be appointed Class Counsel pursuant to Federal Rule of Civil Procedure 23 for the purpose of Final Approval.

NOW, THEREFORE, in consideration of the agreements, releases, and other consideration, and intending to be legally bound, the Parties agree that the litigation is settled, compromised and dismissed on the merits and with prejudice (except as provided herein), without costs to the Parties except as stated herein and subject to approval of the Court, on these terms:

## II.    SETTLEMENT TERMS

### A.    Definitions

1.     "Action" means the lawsuit pending in the United States District Court for the Eastern District of Michigan as described in the caption to this Agreement.

2.     "Benefits-Electing Class Member(s)" means a Class Member who is

either not a Cash Payment Eligible Settlement Class Member or has not submitted a Valid Election Form electing the Cash Option and is deemed to have elected to receive the Benefits Option.

3.      "Benefits Option" means the recovery option comprising certain benefits and services that Class Members are entitled to receive under this Agreement if they do not elect to receive the Cash Option or are not Cash Payment Eligible Settlement Class Members.

4.      "Cash-Electing Class Member(s)" means a Cash Payment Eligible Settlement Class Member who has submitted a Valid Election Form and elected the Cash Option described in this Agreement.

5.      "Cash Option" means the recovery option comprising a cash reward that Cash Payment Eligible Settlement Class Members may elect to receive under this Agreement.

6.      "Cash Payment Eligible Settlement Class Members" means Settlement Class Members who, for the first time, reached the rank of National Director (ND) or higher during the Class Period.

7.      "Class Counsel" means Andrew Kochanowski, Edward Wallace and Matthew Prebeg, and their current respective firms, provided the District Court appoints said counsel upon approval of the Settlement.

8.      "Class Member(s)" means a member of the Settlement Class who does not correctly and timely elect exclusion from the Settlement Class.

9.      "Class Period" means January 1, 2015 through March 1, 2017.

10.     "Complaint" means the Complaint filed by the Plaintiffs on August 10, 2017, as amended.

11.     "Court" means the United States District Court for the Eastern District of Michigan, the Honorable Matthew F. Leitman presiding.

12.     "Defendants" means each person, entity, and individual named as a defendant in the Third Amended Complaint, including ViSalus, Inc., Nick Sarnicola, Ashley Sarnicola, Blake Mallen, Ryan Blair, Todd Goergen, Gary J. Reynolds, Vincent Owens, Kevin Merriweather, and Michael Craig.

13.     "Effective Date" means the date on which all of these conditions are met:

a.     the Parties' execution of this Agreement;

b.     the Court's entry of the Final Approval Order approving this Agreement, entry of an order on attorneys' fees and costs, and entry of a final judgment dismissing the litigation with prejudice and against Plaintiffs and all Class Members and without costs (other than as provided in this Agreement) subject to this Agreement; and

c.     passing the earliest date on which: (i) the time for taking an appeal from the Final Approval Order and judgment has expired, with no appeal being filed; or (ii) if an appeal is taken, the highest court to which such appeal may be taken affirms the Final Approval Order and judgment or dismisses the appeal.

Neither FED. R. CIV. P. 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be considered in determining the above-stated times.

14.     "Election Deadline" means the last date on which a Class Member may submit a Valid Election Form. The Election Deadline will be seventy-five (75) days after the Preliminary Approval Date.

15.     "Election Form(s)" mean the forms, substantially in the form attached as **Exhibits B(1) and B(2)**, whether in electronic form or "hard copy," that may be completed by Class Members and submitted to the Settlement Administrator to elect settlement benefits as

described herein.

16.     "Election Period" means the period during which Class Members may submit Election Forms under the Court's order. The Parties agree that the Election Period should run for seventy-five (75) days after the Preliminary Approval Date.

17.     "Fairness Hearing" or "Final Approval Hearing" means the hearing to be held by the Court, on notice to the Settlement Class, to consider final approval of the Settlement. Class Counsel will raise at this hearing their motion for attorneys' fees and costs, however, any order relating to Class Counsel's motion for attorneys' fees and costs may be separate from the Final Approval Order. The Parties will ask the Court to schedule the Fairness Hearing as soon as possible after one hundred (100) days from the Preliminary Approval Date.

18.     "Final Approval Order" means the Order granting final approval to the Settlement. The Final Approval Order shall not be entered earlier than ninety (90) days after the appropriate officials have been served with notice of the Settlement under the Class Action Fairness Act of 2005, as codified at 28 U.S.C. §§ I 715(b)-(d), with a copy sent to Class Counsel.

19.     "Independent Promoter" or "IP" means any person who enrolled in ViSalus's independent promoter program ("IP Program").

20.     "Founders Equity Incentive Plan" or "FEIP" means the promotion offered by Defendants between January 1, 2015 and March 1, 2017, where eligible IPs could earn incentives beyond those offered in ViSalus' IP Program.

21.     "Named Plaintiff" means Eric J. Harris, Sr.

22.     "Individual Plaintiffs" means Caprece Byrd, Bryant Watts, Renae White, Laura Herl, Dr. Frank McWhorter, and Connie Bates.

23.     "Plaintiffs" means the Named Plaintiff and the Individual Plaintiffs.

24.     "Parties" means the Plaintiffs, ViSalus, and all other Defendants.

25.     "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

26.     "Preliminary Approval Order" means the Order granting preliminary approval of the Settlement, conditionally approving the form and manner of service of the Settlement Notice.

27.     "Released Claims" means any manner of actions, causes of action, suits, accounts, claims, demands, controversies, judgments, obligations, injuries, damages and liabilities of any nature, whenever or however incurred, including claims for costs, fees, expenses, penalties, and attorney's fees, whether class or individual, known or unknown, suspected or claimed, that Plaintiffs or any Class Member ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity against any of the Released Persons, whether in law or equity or otherwise, arising out of or relating to any conduct, act, or omission of any of the Released Persons related to the conduct or similar conduct alleged or that could have been alleged in this litigation including, but not limited to, any actions for fraud, federal and state securities fraud, misrepresentations, violations of 18 U.S.C. §1962(c) and (d), consumer fraud, common law or statutory conversion, negligence, unjust enrichment, breach of contract, or other conduct or omissions relating to the IP Program, the Founders' Equity Incentive Program, or payments related thereto; or Plaintiffs' and Class Members' transactions and interactions with Defendants relating to their status as IPs or FEIP participants.

28.     "Released Persons" means all Defendants and all of their current and former parents, subsidiaries, affiliates, predecessors, successors, and assigns, and each of their respective, current, and former officers, directors, partners (limited, general and otherwise),

owners, employees, agents, attorneys, beneficiaries, and insurers. To avoid doubt, the Released Persons who are non-signatories to the Agreement are third-party beneficiaries and may enforce the release contained therein, just as the Plaintiffs and Class Members' may enforce any release against the Released Persons. Third party beneficiaries who attempt to bring claims, causes of action, or seek remedies against Plaintiffs, any Class Members or their counsel relating to Released Claims, apart from enforcing the release of Released Claims, or who object to this settlement, or who refuse to agree to a dismissal of litigation with each side bearing its own costs, shall cease to be Released Persons and are subject to continued litigation.

29.     "Settlement" means the settlement embodied in this Agreement.

30.     "Settlement Administrator" means Epiq Class Action & Claims Solutions, Inc.

31.     "Settlement Class" means for the Settlement and this Agreement all U.S. Independent Promotors ("IPs") of ViSalus, Inc. ("ViSalus") who qualified for units between January 1, 2015 through March 1, 2017 in the Founders' Equity Incentive Plan ("FEIP"). Excluded from the class, even if they meet the criteria above, are (i) Defendants, and any IPs owned, controlled or otherwise affiliated with any Defendant other than merely by the IP's status as an IP; (ii) IPs who are named defendants, or who are owned, controlled, or otherwise affiliated with named defendants in the Kerrigan Action other than merely the IP's status as an IP; (iii) the presiding judge(s) and his or her (or their) immediate family; (iv) any individual who elects to be excluded from the Settlement Class; and (v) any person who has previously released claims against Defendants or whose claims have been fully and finally adjudicated by a court with jurisdiction over the claims.

32.     "Settlement Notice" is the notice, **Exhibit A,** to the Settlement Class that

provides important information to the Class concerning the Settlement, and directs the Class to the Detailed Notice, which describes the Settlement and the Agreement substantially in the form attached as **Exhibit C** and for which the Court has approved the form and manner of service.

33.     "Settlement Notice Date" is the date by which the Settlement Notice will be disseminated to the Settlement Class, which the Parties shall request to be thirty (30) days after the Preliminary Approval Date.

34.     "Valid Election Form" means an Election Form completed, timely and properly submitted, and corroborated by the list of class members.

35.     "Vi-Net" or "Vi-Net Pro" means the ViSalus website offered to IP's to market an IP's business and enroll customers online.

**B.     Class Certification**

The Parties acknowledge that as part of this Settlement, the Court will be asked to certify a Settlement class under Fed. R. Civ. P. 23(b)(3) as defined herein. If this Agreement fails to become effective or is not implemented under its terms, Defendants reserve all rights they may have to object to class certification in this litigation, Plaintiffs reserve all rights they have, and no representation, concession, or stipulation made in the Settlement or this Agreement shall be law of the case or an admission by Defendants or the Named Plaintiff or have any preclusive effect against Defendants or the Named Plaintiff or give rise to any form of estoppel or waiver by Defendants or the Named Plaintiff in this litigation.

**C.     Settlement Administration**

Subject to the joint approval of Class Counsel and ViSalus, a Settlement Administrator will be hired, paid, and funded by ViSalus.  The Settlement Administrator will be responsible

for providing the Settlement Notice to the Settlement Class and administering the claims of the Class Members. The Settlement Administrator will:

a.      establish   a   toll-free   number   and   a   settlement   website,   such   as www.visalussettlement.com (or another site agreed to by Class Counsel and  ViSalus)  and then having done so, and before sending the Settlement Notice by email, populated it with (a) the Settlement Notice, (b) the Third Amended Complaint, (c) the District Court's decisions on motions to dismiss, (d) the Defendants' Answers, (e) the toll-free number for the Class Members to contact the Settlement Administrator, and (f) the Election Form;

b.      obtain and maintain a database of names and email addresses of the Class Members;

c.      compare that database with other reasonably available sources to increase accuracy;

d.      take reasonable steps to reduce the likelihood that the emailed Settlement Notice will be rejected or blocked by internet providers and "spam" protectors (and inform the Parties if it appears the Settlement Notice has been rejected or blocked);

e.      email the Settlement Notice as approved or directed by the Court with an assigned unique claim number that shall be the IP's identification number as initially created by ViSalus;

f.      maintain and answer, whether through live or automated means, a toll-free telephone number dedicated to the Settlement to assist Class Members in filling out and sending in their responses to the Settlement Notice;

g.      inform Class Members that they may contact Class Counsel if they need additional assistance in completing an Election Form;

h.      provide a blank Election Form to any Class Member who requests one;

i.      create a list of any Class Member whose email is returned undelivered, and then

send each of those Class Members one follow-on postcard notice by mail to his or her last-known address in Defendants' databases providing the Settlement Notice, in the form of **Exhibit A** referring them to the settlement website;

j.      maintain all Election Forms and other documents sent by Class Members to Settlement Administrator relating to settlement administration;

k.      compile a list of Class Members who submit Election Forms, verifying whether they are Valid Election Forms (including by verifying the identity of the Class Members) and recording such elections;

l.      provide to Class Counsel and ViSalus a list of Class Members who have submitted Valid Election Forms and their elections no later than fifteen (15) days after the Election Period begins, and after that, provide to Class Counsel and ViSalus a list of additional Class Members who have submitted Valid Election Forms and their respective elections weekly for the remainder of the Election Period;

m.      provide Class Counsel and ViSalus a complete and final list of each individual Class Member who has excluded himself or herself from the Settlement Class;

n.      provide Class Counsel and ViSalus a complete and final list of all Class Members who have submitted Valid Election Forms with the elections made by each such Class Member, within fifteen (15) days after the Election Period ends; and

o.      administer payments to Settlement Class Members in accordance with the terms of this Agreement.

### D.      Settlement Notice

The Parties agree to cooperate in completing the Settlement Notice, ensuring that the

Settlement Notice complies with the requirements of Fed. R. Civ. P. 23 and due process and obtaining Court approval of the Settlement Notice. Since substantially all of ViSalus's communications with the Class Members (other than the mailing of checks) is done by email, email is likely the most effective method of notice. The Parties agree that notice by email provides the best notice practicable under the circumstances, and will seek Court approval for such notice to be delivered by email in the first instance. Notice by email shall take place by the Settlement Notice Date. The Parties will file the proposed Settlement Notice with the motion for preliminary approval, which shall request Court approval of the form of the Settlement Notice and manner of service. The Settlement Notice shall be substantially in the form of **Exhibit A** attached. In addition, counsel for ViSalus shall send (or cause to be sent by the Settlement Administrator) notice to the appropriate official(s) under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. ViSalus shall be solely responsible for all costs relating to sending the Settlement Notice, administering Election Forms and opt outs, and paying the Settlement Administrator.

In conjunction with the motion for final approval of the settlement and no later than eighty-five (85) days after the Preliminary Approval Date, the Parties shall certify to the Court compliance with the notice provisions of this Section.

### E.     Consideration for Release of Claims

**Benefits for Settlement Class Members who are not Cash Payment Eligible Settlement Class Members or who do not claim a Cash Payment**.  All Settlement Class Members who are not Cash Payment Eligible Settlement Class Members (as defined below) or who are Cash Payment Eligible Settlement Class Members who do not claim a Cash Payment (as described below) will retain all rights to receive or own Units under the FEIP and will also receive the following benefits from ViSalus:

a.    25% Commission Rate on all sales (both first time sales and subsequent sales) made to customers who purchase product from ViSalus for the first time after the Effective Date (*i.e.*, new customers) for one (1) year from the Effective Date;

b.    Free re-enrollment as an IP on the Basic enrollment track (no purchase necessary) for one (1) year from the Effective Date;

c.    Free event registration for one (1) event, if any are held within one (1) year from the Effective Date, and if none are held within one (1) year, then free event registration for the next held event, if held within eighteen (18) months from the Effective Date;

d.    Free Vi-Net Pro Subscription for:

(i)    one (1) year from the Effective Date for all Settlement Class Members who choose the free re-enrollment listed in Section II.E.b. above and who previously paid for Vi-Net Pro; or

(ii)    six (6) months from the Effective Date for all Settlement Class Members who choose the free re-enrollment listed in Section II.E.b. above and did not previously pay for Vi-Net Pro.

**Cash Payment Option for Class Members:**  Settlement Class Members who, for the first time, reached the rank of National Director (ND) or higher during the time period that the FEIP was offered (January 1, 2015 through March 1, 2017) ("Cash Payment Eligible Settlement Class Members") shall have the option of electing to receive a single cash payment to be paid within thirty (30) days of the Effective Date (the "Cash Payment"), subject to the following terms and conditions:

a.    Cash Payment Eligible Settlement Class Members who, for the first time reached the rank of National Director (ND), Executive Director (ED) or Presidential Director (PD) during the time period that the FEIP was offered shall have the option of claiming a one-time Cash Payment in the amount of ONE THOUSAND FIVE HUNDRED AND 00/DOLLARS ($1,500.00).

b.    Cash Payment Eligible Settlement Class Members who, for the first time reached the rank of Ambassador or higher shall have the option of claiming a one-time Cash Payment in the amount of FOUR THOUSAND AND 00/DOLLARS ($4,000.00).

c.    Cash Payment Eligible Settlement Class Members who elect to receive a Cash Payment will forfeit all rights to receive or own Units under the FEIP and will also be deemed to have terminated their independent promotership upon the Effective Date. Cash Payment Eligible Settlement Class Members who do not elect to receive a Cash Payment will retain all rights to receive or own Units under the FEIP.

d.    All Cash Option payments are subject to pro-rata reduction in the event Cash Option Payments and Plaintiff Incentive Award exceeds the total amount of TWO HUNDRED EIGHTY-FIVE THOUSAND AND 00/100 DOLLARS ($285,000).

e.    Within thirty (30) days after the Effective Date, ViSalus, assisted by the Settlement Administrator, shall issue a check to each Cash-Electing Class Member. The checks shall be delivered to each Cash-Electing Class Member at the address on each Cash-Electing Class Member's Election Form by first-class mail. Each Cash-Electing Class Member receiving a check shall have one hundred twenty (120) days from the mailing of the check within which to cash the check. Upon the expiration of one hundred twenty (120) days from the mailing of the check, the check will become void, provided that the check

was properly mailed to the address listed on the Cash-Electing Class Member's Election Form and the Class Member did not cash the check. Such voiding shall invalidate no provision of this Agreement.

**Cash Payment to the Individual Plaintiffs**.  ViSalus will pay, or cause to be paid, to the Individual Plaintiffs Caprece Byrd, Byrant Watts, Renae White, Laura Herl, Dr. Frank McWhorter and Connie Bates, the total sum of FOUR HUNDRED FIFTY THOUSAND AND 00/DOLLARS ($450,000), inclusive of attorneys' fees and costs; such funds to be paid within 14 days following the Effective Date to Andrew Kochanowski/Sommers Schwartz P.C. for distribution to the Individual Plaintiffs in accordance with the agreements they have with counsel.

**F.     Incentive Payments to the Named Plaintiff.**  For his service to the Class, Class Counsel will ask the Court to approve an incentive award to Named Plaintiff Eric J. Harris, Sr., in the amounts of $15,000 ("Plaintiff Incentive Award").  Defendants agree that they will not oppose Class Counsel's request for a Plaintiff Incentive Award that does not exceed $15,000. If a Plaintiff Incentive Award is approved by the Court, ViSalus shall make, or cause to make, that payment, limited to $15,000, within fourteen (14) days of the Effective Date.

**G.     Other Payments by ViSalus.**

Class Counsel shall request up to ONE HUNDRED FIFTEEN THOUSAND AND 00/100 DOLLARS ($115,000.00) for their costs and fees.  The amount and distribution of the fees and costs will rest within the discretion of the Court. Within fourteen (14) days of the Effective Date, ViSalus shall pay, or cause to be paid, the amount awarded by the Court to Class Counsel.  Defendants take no position on an award of costs and fees of up to $115,000 or how it should be allocated among Class Counsel. ViSalus's payment of fees and costs, as awarded by the Court in an amount not to exceed $115,000, is a material condition of this Agreement.

### H.     Full and Final Settlement

The Parties agree they are each settling this action voluntarily after consultation with experienced legal counsel and that the terms were negotiated at arm's length and in good faith. The Parties intend the Settlement to be a final and complete resolution. The Parties agree to cooperate with one another and use their best efforts to finalize and effectuate this Agreement, including, but not limited to, seeking the Court's approval of procedures (including giving the Settlement Notice and scheduling the Fairness Hearing under Federal Rules of Civil Procedure 23(c) and (e)) to obtain Final Approval of the Settlement and the judgment of final dismissal with prejudice. The Parties further agree not to do anything to encourage any member of the Settlement Class to oppose or obstruct the Settlement or to opt out of the Settlement.

### I.     Release

Upon the Effective Date and with no further action by the Court or by any Party to this Agreement, the Individual Plaintiffs; the Named Plaintiff, the Class Members, and all of their respective administrators, executors, personal representatives, heirs, agents, assigns, predecessors, and successors (excluding Class Counsel) collectively, the "Releasors," for good and sufficient consideration as described in this Agreement, the receipt and adequacy of which is acknowledged and confirmed, shall be deemed to, and have remised, released, and forever discharged the Released Claims, which they, or any of them, had or has, or may in the future have or claim to have against the Released Persons (including but not limited to any third-party beneficiaries of this Agreement). After the Effective Date, the Releasors shall not seek, and are hereafter barred and enjoined from seeking, to recover from any Released Persons based, in whole or in part, upon the Released Claims or conduct at issue in the Released Claims.

Releasors also expressly waive and release upon the Effective Date any rights and benefits conferred by any provision, statute, regulation, rule, or principle of law or equity of any state or

applicable jurisdiction that provides that a general release does not extend to claims which a person or creditor does not know or suspect to exist in his favor at the time of executing the release. The Releasors acknowledge that they know that they may hereafter discover facts besides, or different from, those facts which they know or believe to be true regarding the subject of this Agreement, but that they intend to release fully, finally, and forever all Released Claims, and to further such intention, this release shall be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

## III.      PROCEDURES FOR EFFECTUATING SETTLEMENT

### A.      Preliminary Approval

Within fourteen (14) days of the execution of this Agreement, Named Plaintiff will move the Court for an order preliminarily approving the Settlement, substantially in the form of the proposed order at **Exhibit D**, and requesting that the Court:

1.      Approve the form and content and manner of service of the Settlement Notice to be sent to the Settlement Class via email, substantially in the form of **Exhibit A** to this Agreement;

2.      Set the date of the Fairness Hearing, which shall be as soon as possible after one hundred (100) days after the Preliminary Approval Date, and shall be included in the Settlement Notice, and at which Plaintiff shall request and attempt to obtain entry of an order and final judgment, substantially in the form of the proposed order at **Exhibit E**, which:

a.      approves the Settlement as fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23(e) and directs the consummation of the Settlement according to its terms;

b.      directs that, subject to fulfilling the terms, the litigation be dismissed with prejudice and without costs (other than stated herein);

c.  reserves exclusive and continuing jurisdiction over the Settlement, including the administration and consummation of the Settlement, to the Court; and

d.  approves, subject to fulfillment of the terms, the release of the Released Claims as specified herein as binding and effective on all Plaintiffs and all Class Members and permanently bars and enjoins such persons from asserting any Released Claims.

**B.  Treatment of Potential Opt-Outs and Objectors**

Subject to an Order so providing, the Parties agree that:

1.  **Opt-Outs**

Any member of the Settlement Class, other than the Individual Plaintiffs and Named Plaintiff, may elect to be excluded from this Settlement by timely and adequately opting out of the Settlement Class. Any member of the Settlement Class who desires to be excluded from the Settlement Class must give to the Settlement Administrator by the date specified in the Settlement Notice written notice of his or her election to be excluded.

Any notice of exclusion shall include the following from the member of the Settlement Class seeking to be excluded: (a) full name, (b) phone number, (c) address, (d) a statement that the person wishes to be excluded from the settlement, and (e) the signature of the person who wishes to be excluded from the settlement.

The last date to opt out of the Settlement Class will be seventy-five (75) days after the Preliminary Approval Date, subject to Court approval and inclusion in the Settlement Notice ("Opt-Out Deadline").

Any member of the Settlement Class who timely and correctly opts out of the Settlement Class will not be bound by this Agreement, including any releases.

The Individual Plaintiffs and the Named Plaintiff agree not to opt out of this Settlement, but rather affirmatively to support entry of the Final Approval Order. Plaintiffs, Class Counsel,

Defendants and Defendants' counsel shall not encourage any member of the Settlement Class to opt out or discourage any member of the Settlement Class from participating in this Settlement.

### 2.   **Objections**

Any Class Member who wishes to object to this Settlement must file a written objection and, if the objector wishes to appear before the Court, a notice of intention to appear before the Court at the Fairness Hearing and serve copies of the same on Class Counsel and counsel for Defendants. All written objections must: (a) be marked as "Written Objections to Settlement Agreement" in *Harris, et al. v. ViSalus, et al., Case No. 17-cv-12626;* (b) state the objector's full name, address, and telephone number; (c) set forth a brief statement regarding the objections; (d) state the reasons for the objections; (e) include copies of any papers that support the objections; (f) include the objector's signature and verification under oath that the objector believes he/she is a Settlement Class member; and (g) if the objector wants to be heard at the Fairness Hearing, state that the objector intends to appear at the Fairness Hearing. If an attorney makes the objection, the written objection must also provide the attorney's name, address, email address, and telephone number. All objectors may be subject to discovery.

The last date for Class Members to object to the Settlement or file a notice of intention to appear at the Fairness Hearing will be seventy-five (75) days after the Preliminary Approval Date.

Individual Plaintiffs and the Named Plaintiff agree not to object to entry of the Final Approval Order of this Settlement, but rather affirmatively to support entry of the Final Approval Order. Neither the Plaintiffs, Class Counsel, Defendants, nor Defendants' counsel shall in any way encourage any Class Member to object to this Settlement.

### C.   **Final Approval of the Court**

Named Plaintiff shall file all motions and other filings to support the request for a Final

Approval Order no later than 85 days after the Preliminary Approval Date.  Class Counsel shall file all motions and other filings to support the motion for approval of attorneys' fees and costs no later than sixty-five (65) days after the Preliminary Approval Date.

This Agreement and the Settlement are subject to (1) final approval by the Court and (2) final approval of a settlement of the litigation currently captioned *Kerrigan* Action, which is being simultaneously presented for settlement by Class Counsel.

If the Settlement and the settlement in the *Kerrigan* Action are both finally approved, the Court will enter a judgment dismissing all claims against Defendants with prejudice, subject to the terms of this Agreement and the agreement in the *Kerrigan* Action. Upon filing a petition by ViSalus or any of its creditors against ViSalus (1) in any bankruptcy or other insolvency proceeding; (2) seeking any relief under any state or federal debtor relief law; (3) to appoint a liquidator or receiver; (4) for the reorganization or modification of ViSalus's capital structure; or (5) in any assignment for the benefit of creditors proceeding so any benefit conferred to any Plaintiff, Class Member or Class Counsel under this Agreement is deemed a preference or otherwise subject to a "claw back," rescission or otherwise owed back to ViSalus or its estate, this Agreement is null, unless ViSalus has already made all payments required under this Agreement more than 90 days before such proceeding is initiated, and such payment is not subject to the jurisdiction of any such proceeding.

If this Agreement is not approved or if it is materially modified by the Court or upon appeal or remand, any Party may rescind this Agreement in its entirety by written notice to the Court and to counsel for the other Parties filed and served within fourteen (14) days of the event triggering the right to rescind. If no Party timely elects to rescind, then the Parties shall remain bound to the Settlement as so modified. For this paragraph, a "material modification" significantly affects the rights or obligations of one or more of the Parties. Without limiting the

preceding and by way of illustration only, (a) any change to the Release in this Agreement; and (b) any material change to the Final Approval Order, shall be deemed to be a material modification.

### D.    Termination of Agreement

This Agreement shall terminate: (a) automatically if the Court fails to approve the Agreement or the agreement in the *Kerrigan* Action; (b) at the timely election of any Party, in the event of any proposed material modification of this Agreement by the other Party as a condition to approval of the Settlement, except for proposed modifications to the Class Notice; (c) at the timely election of ViSalus, in the event of any proposed material modification of the Class Notice by the plaintiffs as a condition to approval of the Settlement; (d) prior to the Court's approval of this Agreement, upon the agreement of the Parties through their counsel; or (e) at the timely election of ViSalus, in the event that  more than fifteen (15) Class Members, independent of any communications or advice by any Defendant, opt-out of the Settlement.

### E.    Effect of Termination of Agreement

If this Agreement is terminated, each Party shall return to his, her, or its respective status as of the execution of this Agreement, and the Parties shall proceed as if this Agreement had not been executed and any related orders had not been entered, preserving all of their respective claims and defenses.

## IV.    MISCELLANEOUS PROVISIONS

### A.    Costs

Except as otherwise provided in this Agreement, each Party shall bear its own costs, attorneys' fees, and expenses.

### B.    Entire Agreement

This Agreement, with its Exhibits, constitutes the entire agreement between the Parties

regarding the Settlement and supersedes all prior negotiations, communications, memoranda, and agreements between the Parties. Neither Plaintiffs nor Defendants are entering into this Agreement in reliance upon any representations, warranties, or inducements other than those contained in this Agreement.

### C.    Amendments

This Agreement may be modified or amended only by a writing signed by the Parties or their counsel.

### D.    Extensions of Time

The Parties may jointly request that the Court allow reasonable extensions of time to carry out the Agreement without formally amending this Agreement.

### E.    The Parties' Authority

Under the Court's order designating them as class counsel, Class Counsel represent and warrant they may take all actions required or permitted to be taken by or on behalf of the Named Plaintiff and the Settlement Class and Class Members to effectuate this Agreement. Subject to the significance of the event, Class Counsel also may enter into modifications or amendments to this Agreement on behalf of the Named Plaintiffs, the Settlement Class and the Class Members.

ViSalus and ViSalus's counsel represent and warrant that the undersigned acting on behalf of ViSalus have authority to execute this Agreement on behalf of ViSalus.  Each of the other Defendants and their counsel represent and warrant that the undersigned acting on their behalf have the authority to execute this Agreement on their behalf.

### F.    Counterparts

The Parties may execute this Agreement in one or more counterparts, all of which together shall be deemed the same instrument. The Parties agree that they may file a copy of the executed counterparts for the motion to approve the Settlement, either in portable document format or some

other suitable electronic form, as an exhibit to Plaintiff's Motion for Preliminary Approval without the need to collate and file a copy with original signatures.

### G.    Binding Nature

This Agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of Named Plaintiffs, Class Members, and Defendants.

### H.    Construing the Agreement

This Agreement shall not be construed more strictly against one Party than another regardless of who drafted it. The Parties recognize this Agreement results from arms-length negotiations between the Parties, and they acknowledge that all Parties have contributed substantially to preparing this Agreement; so, the doctrine of *contra proferentum* shall not apply in construing this Agreement, nor shall any other such similar doctrine apply. Each Party acknowledges that it has been and is being advised by competent legal counsel of the Party's own choice and understands this Agreement, and the meaning and import thereof, and that such Party's execution of this Agreement is with the advice of such Party's counsel and of such Party's own free will. Each Party represents and warrants it has enough information regarding the litigation, the Settlement, and the other Parties to reach an informed decision and has, independently and without relying on other Parties, and based on it has deemed appropriate, made its own decision to enter into this Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Agreement.

### I.    Taxes

Each individual, including the Individual Plaintiffs, Named Plaintiff, Class Members, and Class Counsel receiving funds under this Agreement shall be solely responsible for filing all information and other tax returns necessary or making any tax payments related to funds received by each under this Settlement Agreement.

**J.     Choice of Law**

This Agreement shall be governed by and interpreted under the substantive law of the State of Michigan, exclusive of its choice of law principles.

**K.     Jurisdiction**

The Parties submit to the exclusive jurisdiction of the United States District Court for the Eastern District of Michigan to enforce this Agreement or implementing any part of the Settlement embodied in this Agreement.

**L.     No Admissions**

Neither this Agreement nor any proceedings connected with it shall be deemed or construed to be an admission by any Party or any Released Person of any wrongdoing or liability or evidence of any violation by Defendants of any federal or state statute or law, and evidence thereof shall not be discoverable or used, directly or indirectly, except in a proceeding to interpret or enforce this Agreement. This Agreement represents the settlement of disputed claims and does not constitute, nor shall it be construed as, an admission of the correctness of any position asserted by any Party, or an admission of liability or of any wrongdoing by any Party, or as an admission of any strengths or weaknesses of the Named Plaintiff's, the Individual Plaintiffs', or the Settlement Class's claims or Defendants' defenses.

**M.     Headings**

The captions and headings employed in this Agreement are for convenience only, are not a part of the Agreement, and shall not be used in construing or interpreting the Agreement.

**N.     Dates and Days**

Except as specifically provided for, where this Agreement refers to any period in days, it shall be understood to refer to calendar days; however, if the end date of the period falls on a weekend or federal holiday, then the end date shall be the next day that is not a weekend or federal

holiday.

IN WITNESS WHEREOF, the Parties have executed this Agreement, as of the date and year first above written.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /                    [Signature page follows]

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

| For the Plaintiffs: | For the Defendants: |
|---|---|
| **Eric J. Harris, Sr.**<br><br>_____ | **VISALUS, INC.**<br><br>By: _____<br>    Blake Mallen<br>    Its: President |
| **Caprece Byrd**<br><br>_____ | |
| **Bryant Watts**<br><br>_____ | **QUARLES & BRADY LLP**<br><br>By: _____<br>    Edward A. Salanga<br>    _Attorneys for Defendants ViSalus, Inc., Nick Sarnicola, Ashley Sarnicola, Blake Mallen, Ryan Blair, Todd Goergen, Gary J. Reynolds, Kevin Merriweather and Michael Craig_ |
| **Renae White**<br><br>_____ | |
| **Laura Herl**<br><br>_____ | |
| **Dr. Frank McWhorter**<br><br>_____ | |
| **Connie Bates**<br><br>_____ | |
| **SOMMERS SCHWARTZ, P.C.**<br><br>By: _____<br>    Andrew Kochanowski<br>    _Attorneys for Plaintiffs_ | |

**PREBEG, FAUCETT & ABBOTT, PLLC**


By:_____
     Mathew J.M. Prebeg
     *Attorneys for Plaintiffs*

**WEXLER WALLACE LLP**


By: _____
     Edward A. Wallace
     *Attorneys for Plaintiffs*