UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC J. HARRIS, SR., individually, and on
behalf of all others similarly situated, and
CAPRECE BYRD, BRYANT WATTS,
RENAE WHITE, LAURA HERL, DR.
FRANK McWHORTER, and CONNIE
BATES, individually on their own behalf,

      v.

VISALUS, INC., a corporation, et al.,

      Defendants.

Case No. 4:17-cv-12626
Hon. Matthew F. Leitman

**PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES,
LITIGATION COSTS AND EXPENSES,
AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVE**

Plaintiff Eric J. Harris, Sr., individually, and on behalf of all other similarly situated settled class of ViSalus, Inc. distributors, hereby moves the Court, pursuant to Rules 23 and 54 of the Federal Rules of Civil Procedure, for an award of attorneys' fees of **$95,843.44**, litigation costs and expenses of **$19,156.56** and an incentive award of **$15,000** for the Class Representative, from the proceeds of the settlement with the ViSalus Defendants. In support of this motion, Plaintiff relies upon the

1

accompanying brief and the Declarations attached thereto, which are incorporated by reference herein.

Dated: August 19, 2019

Respectfully submitted,

*s/ Andrew Kochanowski*
Andrew Kochanowski
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, MI 48076
(248) 355-0300
akochanowski@sommerspc.com

*s/ Matthew J.M. Prebeg*
Matthew J.M. Prebeg
Brent T. Caldwell
PREBEG, FAUCETT & ABBOTT, PLLC
Attorneys for Plaintiffs
8441 Gulf Freeway, Suite 307
Houston, TX 77017
(832) 743-9260
mprebeg@pfalawfirm.com
bcaldwell@pfalawfirm.com

*s/ Mark R. Miller*
Edward A. Wallace
Mark R. Miller
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
(312) 589-6272
EAW@wexlerwallace.com
MRM@wexlerwallace.com

*Attorneys for Plaintiffs*

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC J. HARRIS, SR., individually, and on
behalf of all others similarly situated, and
CAPRECE BYRD, BRYANT WATTS,
RENAE WHITE, LAURA HERL, DR.
FRANK McWHORTER, and CONNIE
BATES, individually on their own behalf,

      Plaintiffs,

    v.

VISALUS, INC., a corporation, et al.,

      Defendants.

Case No. 4:17-cv-12626
Hon. Matthew F. Leitman

**PLAINTIFF'S BRIEF**
**IN SUPPORT OF THE MOTION FOR AN AWARD OF**
**ATTORNEYS' FEES, LITIGATION COSTS AND EXPENSES,**
**AND INCENTIVE AWARD FOR THE CLASS REPRESENTATIVE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF ISSUES PRESENTED ........................................ vi

I.    INTRODUCTION ................................................................... 1

II.   BACKGROUND AND SUMMARY OF WORK PERFORMED
      TO DATE BY PLAINTIFFS' COUNSEL ................................. 4

III.  CLASS NOTICE ..................................................................... 6

IV.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE ............ 7

   A.  EITHER THE PERCENTAGE-OF-THE-RECOVERY
       METHOD OR LODESTAR IS AN APPROPRIATE METHOD
       FOR ASSESSING THE FEE REQUEST AND UNDER BOTH
       METHODS THE AMOUNT SOUGHT IS REASONABLE. ............... 8

   B.  THE REQUESTED FEE CONSTITUTES A FAIR AND
       REASONABLE PERCENTAGE OF THE SETTLEMENT. ................ 9

       1.  THE REQUESTED FEE AWARD IS WELL WITHIN THE
           RANGE OF REASONABLENESS. .............................................. 10

   C.  CONSIDERATION OF THE FACTORS IDENTIFIED BY
       THE SIXTH CIRCUIT SUPPORTS THE REQUESTED FEE
       WHETHER THE COURT USES A PERCENTAGE METHOD,
       A LODESTAR METHOD, OR BOTH CROSS-CHECKED
       WITH EACH OTHER ........................................................................ 13

       1.  PLAINTIFFS' COUNSEL SECURED A VALUABLE
           BENEFIT FOR THE CLASS. ...................................................... 14

       2.  THE VALUE OF THE SERVICES ON AN HOURLY
           BASIS CONFIRMS THAT THE REQUESTED FEE IS
           REASONABLE AND, ALTERNATIVELY, THE COURT
           COULD TREAT THE ATTORNEY FEES IN THIS CASE
           ON A LODESTAR BASIS. ........................................................... 14

       3.  THE REQUESTED FEE IS FAIR AND REASONABLE
           GIVEN THE REAL RISK THAT PLAINTIFFS'
           COUNSEL COULD HAVE RECEIVED NO

COMPENSATION FOR THEIR EFFORTS IF THE
LITIGATION HAD NOT BEEN SUCCESSFUL. ........................17

4.      SOCIETY HAS AN IMPORTANT STAKE IN THIS
LAWSUIT AND IN AN AWARD OF REASONABLE
ATTORNEYS' FEES TO CLASS COUNSEL. ............................18

D.      THE COMPLEXITY OF THIS CASE SUPPORTS THE
REQUESTED FEE. .............................................................................19

E.      SKILL AND EXPERIENCE OF COUNSEL. ....................................20

V.      REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES. ......20

VI.     AN INCENTIVE AWARD TO THE CLASS REPRESENTATIVE
ARE WARRANTED. .............................................................................21

CONCLUSION ................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Allan v. Realcomp II, Ltd.*, 2014 WL 12656718 at *2 (E.D.Mich.
Sept. 4, 2014) ..................................................................................13

*Bessey v. Packerland Plainwell, Inc.*, 2007 WL 3173972, at *4
(W.D. Mich. 2007) ...........................................................................12

*Bourne v. Ansara Rest. Group, Inc.*, 2016 WL 7405804 at *3
(E.D. Mich. Dec. 22, 2016) ..............................................................13

*Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir. 1996) .....................13

*City of Plantation Police Officers' Employees' Ret. Sys. v. Jeffries*,
No. 2:14-CV-1380, 2014 WL 7404000, at *11 (S.D. Ohio Dec. 30,
2014) .........................................................................................15, 16

*Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279
(6th Cir. 2016)..........................................................................8, 12, 16

*Hadix v. Johnson*, 322 F.3d 895, 897
(6th Cir. 2003)...................................................................................21

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) .....................................7

*Hillson v. Kelly Servs. Inc.*, 16 2017 WL 279814, at *6
(E.D. Mich. 2017) .............................................................................22

*In re Automotive Parts Antitrust Litig.*, 2016 WL 8201516, at *1 ...........9

*In Re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 754
(S.D. Ohio 2007)...............................................................................14

*In re Cardizem*, 218 F.R.D. 508, 534 (E.D. Mich. 2003)...................19, 20

*In re Delphi Corp. Sec. Derivative & ERISA Litig.,* 248 F.R.D.
483, 503 (E.D. Mich. 2008) ..........................................................14, 19

*In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245, 260

   (N.D. Ill. 1979)....................................................................................18

*In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473

   (E.D. Mich. Jan. 20, 2015).............................................................13, 23

*In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, *1

   (E.D. Tenn. Jun. 30, 2014) ............................................................13, 23

*In re Wire Harness Cases*, 2:12-cv-00101 (E.D. Mich.) (Doc. 495), at 4 ...............18

*Int'l Woodworkers of Am. AFL-CIO and its Local No. 5-376 v.*

   *Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986).......................................18

*Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) .................................15

*Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ..................7

*Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) .........................................18

*Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.,* No. 2:10–

   cv–00789, 2014 WL 5034643, at *8 (S. D. Ohio Oct.8, 2014)...........................17

*Kerrigan, et al., v. ViSalus, Inc., et al.*, Case No. 2:14-cv-12693 .........................1, 2

*Martin v. Trott Law, P.C.,* No. 15-12838, 2018 WL 4679626, at *7

   (E.D. Mich. Sept. 28, 2018).................................................................9

*Miller v. Davis,* 267 F. Supp. 3d 961, 996 (E.D. Ky. 2017)....................................16

*Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989) ...................................................17

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)..............................13

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,

   483 U.S. 711, 716 (1987)...................................................................17

*Polyurethane Foam,* 2015 WL 1639269, at * 7 ........................................................20

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516

   (6th Cir. 1993)...............................................................................8, 9, 15

*See In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 275

   (S.D. Ohio 1997)..............................................................................22

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*,

    25 F.3d 299, 311 (6th Cir. 2016) ............................................................21

*Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F. Supp. 2d, 521, 528

    (E.D. Ky. 2010)........................................................................................12

## Statutes

28 U.S.C. § 1715 ...............................................................................................7

MCL 451.2501-2502 ..........................................................................................1

MCL 451.2509(2), (4) ........................................................................................1

Securities Exchange Act of 1934 (15 U.S.C. §§ 78a, *et seq.*) §10(b)

    and Rule 10b- 5 and §§ 12(1) and (2) ...............................................1

## Rules

Fed. R. Civ. P. 23(h) .....................................................................................6, 7

Fed R. Civ. P. 23(h)(1) and (2) .........................................................................8

## STATEMENT OF ISSUES PRESENTED

1.    Should the Court award Plaintiffs' Counsel attorneys' fees of $95,843.44 and litigation costs and expenses of $19,156.56?

2.    Should the Court award the Class Representative Plaintiff a $15,000 incentive award?

## I.   INTRODUCTION

This motion is submitted in support of Plaintiffs' Counsels' fee and costs petition in the total amount of $115,000 for service to a class, resulting in a settlement. The settled class is composed of 434 ViSalus, Inc. distributors who received units in the Founders Equity Incentive Plan ("FEIP").  This class action lawsuit was initially filed on August 10, 2017 (Dkt. 1) by seven plaintiffs, alleging eight counts, initially against eight separate defendants, and eventually against ten defendants, complaining of securities fraud violations by a nutritional product multi-level marketing company, ViSalus, Inc. The lawsuit related to a March to Equity investment promotion, delivered in connection with the FEIP offered to certain Independent Promoters ("IPs") of ViSalus. These counts included Sections 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934; Sections 12(1) and (2) of the 1934 Exchange Act (15 U.S.C. §§ 78a, *et seq*.); Sections 501, 502, 509 (2) and (4-7) of the Michigan Uniform Securities Act, MCL 451.2501-2502, MCL 451.2509(2); statutory conversion; and for declaratory and injunctive relief. This action is factually related to the co-pending case against a larger group of defendants, including ViSalus, in *Kerrigan, et al., v. ViSalus, Inc., et al.*, Case No. 2:14-cv-12693 (the "*Kerrigan* Action"). Settlements in this and the *Kerrigan* action have now been preliminarily approved. This fee petition is made in advance of a Final Fairness Hearing scheduled

for October 1, 2019. The amount sought here, $115,000, has been disclosed to the settling Plaintiff Class.

Before filing this case, plaintiffs conducted months of detailed investigation and discovery into the FEIP, any value that could be assigned to the equity allegedly offered through the FEIP, the manner in which the FEIP was promoted, and whether the putative Class Members ever actually received equity in ViSalus. This investigation included multiple trips to Colorado for in-person meetings with plaintiffs and witnesses, and extensive research into electronically available promotional material in connection with the FEIP. Many of the facts available to plaintiffs, and necessary to achieve and evaluate the settlement, were also discovered through additional independent research and extensive written discovery, and depositions, in the *Kerrigan* Action.

The instant case was aggressively pursued by the plaintiffs for almost two years, against vigorous defenses that included two motions to dismiss on various points of fact and law (Dkts. 39 and 57). The plaintiffs responded to these motions (Dkts.42, 52, and 58), and amended their complaint on three separate occasions.

The Parties engaged in arms-length settlement negotiations conducted with the assistance of a mediator, Mr. Thomas G. McNeill. These sessions included three full-day mediation sessions, conducted concurrent with settlement negotiations in the *Kerrigan* Action. The first two sessions were held in Detroit, Michigan in 2017 and

2

2018, and the third session was held in New York, New York in October 2018. Named

Plaintiff Eric J. Harris, Sr. has acted as a putative class representative since September

29, 2017. (Dkt. 30).[1]

The negotiation resulted in a settlement for this class in which, as described

below, members of the class receive a cash option or a benefits option. The cash option

for the class provides payments to the class member of between $1500 and $4,000.

The class is composed of the following:

> All U.S. Independent Promotors of ViSalus, Inc. who
> qualified for units between January 1, 2015 through March
> 1, 2017 in the Founders' Equity Incentive Plan.

The settlement, preliminarily approved by the Court, provided that 434

individuals identified in discovery as qualified participants, would receive notice

of the settlement. This has now taken place. The claims administrator, Epiq, reports

that all of the notices have been delivered by email or mail. To date there have been

two opt outs from the settlement. Plaintiffs' Counsel now respectfully move for an

order awarding: 1) attorneys' fees of $95,843.44; 2) $19,156.56 for litigation costs

and expenses incurred by Plaintiffs' Counsel; and 3) an incentive award in the

---

[1] Through the lengthy mediation and settlement discussions—including discussions of the factual circumstances underlying the various plaintiffs' claims—the parties reached consensus that settlement was best reached, and plaintiffs agreed the interests of the Class were best served, by amending the complaint to allow Mr. Harris to act as the sole class representative. Therefore, a Third Amended Complaint was filed on April 16, 2019, with Mr. Harris as the putative class representative. (Dkt. 67).

amount of $15,000 for Class Representative Robert Harris.  For the reasons set forth herein, and as further supported by their contemporaneously filed Declarations, Plaintiffs' Counsel respectfully submit that the requested fee, expense, and incentive awards are fair to the class members, Plaintiffs, and Plaintiffs' Counsel, and are reasonable under both well-established Sixth Circuit precedent concerning awards of attorneys' fees in class action litigation.

## II.   BACKGROUND AND SUMMARY OF WORK PERFORMED TO DATE BY PLAINTIFFS' COUNSEL

Plaintiffs' Counsel throughout this case has been the Southfield, Michigan firm Sommers, Schwartz, P.C., ("Sommers"), Houston, Texas-based Prebeg, Faucett & Abbott, PLLC, ("PFA"), and Chicago-based Wexler Wallace LLC ("Wexler"). Sommers' senior partner Andrew Kochanowski, together with Matthew Prebeg of PFA and Mark Miller of Wexler, were the core leadership team in this litigation and performed much of the legal work expended in this case.

The case began in 2017. In conducting the litigation Plaintiffs' Counsel have:

- Traveled several times to Colorado to meet with both Plaintiffs, other witnesses, and local attorneys. During this time counsel performed extensive investigations into the activities of the named defendants in selling the FEIP Plan. That work involved finding and reviewing dozens of videos, interviewing many witnesses, and obtaining and reviewing thousands of pages of documents, including SEC filings made by ViSalus in connection with fund-raising efforts;

4

- The resulting multi-month investigation resulted in counsel drafting and filing a 200+ page, multi-count complaint (Dkt. 1);

- Preparing and filing an emergency motion for protective order arising from certain disputed actions by the Defendants (Dkt. 22).

- Preparing an amended complaint following additional information concerning the claimed activity and naming additional parties (Dkt. 30);

- Responded to a motion to dismiss (Dkt. 39-44) which resulted in an opinion allowing a second amendment (Dkt. 53);

- Prepared supplemental briefs by order of the Court adding securities allegations (Dkt. 48);

- Drafted a 200+ page Second Amended Complaint (Dkt. 54);

- Fully briefed a second motion to dismiss (Dkt. 57-60);

- Prepared a Third Amended Complaint (Dkt. 67);

- Attended multiple hearings and telephone conferences with the Court;

- Successfully negotiated settlement with the Defendants through mediation over several sessions in Detroit and New York;

- Met with and discussed the case on many occasions with various Plaintiffs and the Class Representative;

- Prepared the settlement agreement;

- Drafted the settlement notices, orders, and the preliminary and final approval briefs seeking approval from the Court for the settlements;

- Prepared the motion for preliminary approval (Dkt. 68).

(Exhibit 1, Declaration of Andrew Kochanowski). Throughout the case Plaintiffs' Counsel have sought to avoid duplication of efforts among the attorneys and to work cooperatively and efficiently with defense counsel and the Court. (Exhibit 2, Declaration of Edward Wallace; Exhibit 3, Declaration of Matthew Prebeg).

## III.   CLASS NOTICE

As required by Fed. R. Civ. P. 23(h), the Notice of Proposed Settlement approved by the Court informed the class members that Plaintiff would seek $115,000 in attorney fees and costs. The Notice was transmitted to all potential Settlement Class members identified by Defendants. A copy of the Notice has also been posted on-line in accordance with the terms of the preliminary approval order.[2] The Notice also informed the Settlement Class Members that Plaintiffs' Counsel would seek payment of an incentive award for the individual Class Representative, Mr. Harris, in the amount sought. It also explained how Settlement Class Members could object to the requests.

---

[2] Counsel for Defendants have informed Plaintiffs' Counsel that their respective clients fulfilled their obligations under 28 U.S.C. § 1715 (the "Class Action Fairness Act of 2005"). The Notice and associated documents have been posted at https://visalusfeipsettlement.com/.

The deadline for submission of any objections is August 28, 2019. To date, there have been two filed requests for exclusion. Plaintiffs' Counsel will provide the Court with a final report on any objections or requests for exclusion before the October 1, 2019 scheduled Fairness Hearing.

## IV.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

Fed. R. Civ. P. 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Federal courts at all levels encourage litigants to resolve fee issues by agreement whenever possible. As the United States Supreme Court explains, "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").

As discussed above, Plaintiffs' Counsel have complied with the requirements of Rule 23(h)(1) and (2), which provide for notice to the class of the attorneys' fees request and an opportunity to object. What remains for the Court to determine is whether the requested fee is reasonable and fair to the class members and Plaintiffs' Counsel under the circumstances. As discussed below, Plaintiffs' Counsel believe

their attorneys' fees request is fair to the class members, reasonable under the circumstances, and well-supported by applicable law.

### A. EITHER THE PERCENTAGE-OF-THE-RECOVERY METHOD OR LODESTAR IS AN APPROPRIATE METHOD FOR ASSESSING THE FEE REQUEST AND UNDER BOTH METHODS THE AMOUNT SOUGHT IS REASONABLE.

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016). Sixth Circuit law grants district courts discretion to select an appropriate method for determining the reasonableness of attorneys' fees in class actions, between a pure percentage fund, a pure lodestar, or a mixture of the two, where one method effectively cross-checks the other. As *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) provided:

> When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved. The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved. For these reasons, it is necessary that district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.

*See also Gascho*, 822 F.3d at 279 (discussing the advantages and disadvantages of the two methods). As recently described:

8

It is necessary that district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *[citation omitted]* … "District courts have the discretion to select the particular method of calculation, but must articulate the 'reasons for adopting a particular methodology and the factors considered in arriving at the fee.' "

*Martin v. Trott Law, P.C.,* No. 15-12838, 2018 WL 4679626, at *7 (E.D. Mich. Sept. 28, 2018).

Here, either method, when cross-checked with the other, reveals that the fees sought are reasonable and appropriate. As set forth below, the lodestar amount is well under those approved in this district in securities litigation. Under a percentage basis, the fees sought are reasonable as Plaintiffs' Counsel seeks a modest percentage of the benefits that flow to the settling class.

### B.   THE REQUESTED FEE CONSTITUTES A FAIR AND REASONABLE PERCENTAGE OF THE SETTLEMENT.

A "percentage-of-the-fund … method of awarding attorneys' fees… eliminates disputes about the reasonableness of rates and hours, conserves judicial resources, and aligns the interests of class counsel and the class members." *In re Automotive Parts Antitrust Litig.*, 2016 WL 8201516, at *1 (collecting cases); *see also Rawlings*, 9 F.3d at 515 ("trend towards adoption of a percentage of the fund method in [common fund] cases").

**1.    THE REQUESTED FEE AWARD IS WELL WITHIN THE RANGE OF REASONABLENESS.**

The settlement reached in this case has both cash and benefits election options made available to each class member, totaling 434 current and former distributors. The benefits of this settlement has a total value of over $400,000 to the class.

**A.    SETTLEMENT TERMS**

Settlement Class Members who, for the first time, reached the rank of National Director or higher during the time period that the FEIP was offered (January 1, 2015 through March 1, 2017) are eligible to elect a Cash Option. Each Settlement Class Member who is eligible for the Cash Option, and timely elects to receive the Cash Option, will receive a cash payment of either $1,500 or $4,000, depending on the IP rank the Settlement Class Member reached for the first time during the time period the FEIP was offered.

The Settlement Class Members who are eligible to choose a cash payment option may also choose the Cash Option or a Benefits Option. By default, if a Settlement Class Member is not eligible for a Cash Option, or does not choose the Cash Option, the Settlement Class Member will automatically be awarded the Benefits Option.

The maximum amount to be paid out under the Cash Option, plus any incentive award, is $285,000. Settlement Class Members who elect the Cash Option will forfeit

all rights to receive or own Units (of equity) under the FEIP, shall also be terminated as IPs, and will no longer be eligible to receive benefits as IPs.

Settlement Class Members who are not eligible for a Cash Option or those who are eligible but do not elect to receive a Cash Payment will retain all rights to receive or own Units under the FEIP, and will also automatically receive the following benefits (besides any other benefits to which he or she may be entitled as an IP):

- A 25% Commission Rate on all sales (both first time sales and subsequent sales) made to customers who purchase product from ViSalus for the first time after the Effective Date (*i.e.*, new customers) for one (1) year from the Effective Date;

- Free re-enrollment as an IP on the Basic enrollment track (no purchase necessary) for one (1) year from the Effective Date;

- Free event registration for one (1) event, if any are held within one (1) year from the Effective Date, and if none are held within one (1) year, then free event registration for the next held event, if held within eighteen (18) months from the Effective Date; and

- Free Vi-Net Pro Subscription for one year from the Effective Date for all Settlement Class Members who choose the free re-enrollment listed above and who previously paid for Vi-Net Pro; or six (6) months from the Effective Date for all Settlement Class Members who choose the free

11

re-enrollment listed above and who did not previously pay for Vi-Net Pro.

The Cash Option plus the Benefits Option, along with Defendants' agreement to pay attorneys' fees, costs, and the expenses of class administration, make the total value of the settlement in excess of $400,000. The "right to share the harvest of the suit upon proof of [class claimants] identity, *whether or not they exercise it,* is a benefit in the fund created by the efforts of class representatives and their counsel." *Gascho*, 822 F.3d at 282 (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) (allowing district courts discretion to award fees based on rights conferred on every class member whether or not exercised).

## B. THE REQUESTED FEE IS IN LINE WITH PERCENTAGES AWARDED IN THIS DISTRICT UNDER THE PERCENTAGE METHOD

A wealth of authority from this Circuit and others approve class action fees in the range of 30% to one-third of a common fund. *See Bessey v. Packerland Plainwell, Inc.*, 2007 WL 3173972, at *4 (W.D. Mich. 2007) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery") (internal quotation marks omitted); *Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F. Supp. 2d, 521, 528 (E.D. Ky. 2010) ("Using the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable"); *Bourne v. Ansara Rest.*

12

*Group, Inc.*, 2016 WL 7405804 at *3 (E.D. Mich. Dec. 22, 2016) (approving "a third of the potential gross recovery and creation of the common benefit fund"); *Allan v. Realcomp II, Ltd.*, 2014 WL 12656718 at *2 (E.D. Mich. Sept. 4, 2014) (finding award of one-third of the common fund reasonable); *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) (one-third of a $19 million fund); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, *1 (E.D. Tenn. Jun. 30, 2014) (one-third of a $73 million fund). This is not a common fund case, moreover, and the fees and incentive award is being paid by the Defendants.

**C.   CONSIDERATION OF THE FACTORS IDENTIFIED BY THE SIXTH CIRCUIT SUPPORTS THE REQUESTED FEE WHETHER THE COURT USES A PERCENTAGE METHOD, A LODESTAR METHOD, OR BOTH CROSS-CHECKED WITH EACH OTHER.**

The Sixth Circuit has identified the following factors to guide courts in weighing a fee award: 1) the value of the benefit rendered to the class; 2) the value of the services on an hourly basis; 3) whether the services were undertaken on a contingent fee basis; 4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; the complexity of the litigation; and 6) the professional skill and standing of counsel involved on both sides. *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009); *Bowling v. Pfizer, Inc.*,102 F.3d 777, 780 (6th Cir. 1996). When applied to the facts of this case, these factors indicate that the fee

requested constitutes fair and reasonable compensation for Plaintiffs' Counsel's' efforts.

### 1. PLAINTIFFS' COUNSEL SECURED A VALUABLE BENEFIT FOR THE CLASS.

The result achieved for the class is the principal consideration. *E.g., In re Delphi Corp. Sec. Derivative & ERISA Litig.,* 248 F.R.D. 483, 503 (E.D. Mich. 2008). Here, as more fully discussed above, Plaintiffs' Counsel have achieved an excellent recovery in cash, services and product for the Settlement Class given the circumstances of this case.

### 2. THE VALUE OF THE SERVICES ON AN HOURLY BASIS CONFIRMS THAT THE REQUESTED FEE IS REASONABLE AND, ALTERNATIVELY, THE COURT COULD TREAT THE ATTORNEY FEES IN THIS CASE ON A LODESTAR BASIS.

When fees are awarded using the percentage-of-the-fund method, this Court and others have applied a lodestar "cross-check" on the reasonableness of a fee calculated as a percentage of the fund. *In Re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 754 (S.D. Ohio 2007). The "lodestar check" in this case supports the requested fees. Alternatively, the Court could treat this case as a pure lodestar fee case.[3] Many

---

[3] "The lodestar method's listing of hours spent and rates charged provides greater accountability. In addition, enhancing the lodestar with a separate multiplier can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved. The lodestar method also encourages lawyers to assess the marginal value

14

of the claims at issue were of a type that typically supports using a lodestar analysis. *City of Plantation Police Officers' Employees' Ret. Sys. v. Jeffries*, No. 2:14-CV-1380, 2014 WL 7404000, at *11 (S.D. Ohio Dec. 30, 2014) (in a securities case lodestar method of calculation is appropriate).

Regardless which method the Court chooses, or both cross-checked with one another, the amount of time Plaintiffs' Counsel have expended since the inception of the case in 2017 makes clear that the fee requested does not constitute a "windfall." Indeed, the fees charged by the three firms are more than twice what is being sought here.

To calculate the lodestar a court must first multiply the number of hours counsel reasonably expended on the case by their reasonable hourly rate. *See Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). Here, a very substantial amount of time had to be spent by Plaintiffs' Counsel litigating the case and achieving the settlements. As the Declarations submitted by the law firms set forth, Plaintiffs' Counsel have expended 898 hours from the inception of the case through August 18, 2019. Plaintiffs' Counsel submit that the hours expended on this case since inception are reasonable. The firms each kept detailed minute entries of their time spent, and the identity of the attorneys performing these tasks, as well as the detail of what occurred in this litigation is supplied in the attached declarations. As noted there, should the

---

of continuing work on the case, since the method is tied to hours and rates, and not simply a percentage of the resulting recovery." *Rawlings*, 9 F.3d at 516.

Court wish to have and inspect the actual daily detail, Plaintiffs' Counsel is prepared to submit these *in camera*.[4]

Each counsel has utilized its customary rates[5] in class action and complex litigation practice.[6] (Exhibits 2, 3, and 4). These rates have not only been found to be reasonable by courts for the Plaintiffs' Counsel (for example, Sommers and PFA were awarded the same or similar hourly rate fees at a 2X multiplier by the *Torres v. SGE LLC* court, Exhibit 1) but have been found reasonable by courts in the Sixth Circuit. *See, e.g., Miller v. Davis,* 267 F. Supp. 3d 961, 996 (E.D. Ky. 2017) (fee shifting case approves $700 hourly rates). The paralegal rates charged have also been found to be

---

[4] Where the district court uses, as suggested here, a percentage basis cross-checked with a lodestar, the Sixth Circuit does not require submission of the actual time records. *Gascho*, 822 F.3d at 281 ("the district court also employed the percentage of the fund cross-check … that method independently validated the decision to award the attorney's fees in the case). Plaintiffs nevertheless present a detailed listing of the tasks performed in this case in their declarations. Should the Court decide to treat this as a pure lodestar case, detailed time records can be delivered in advance of the Final Fairness Hearing.

[5] "The prevailing market rate is 'that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.' "*[citations omitted]* "The appropriate rate, therefore, is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *[citations omitted]* "A court may, however, award a higher hourly rate for an out-of-town specialist if (1) hiring the out-of-town specialist was reasonable in the first instance, and (2) if the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *[citation omitted]*

*City of Plantation Police Officers' Employees' Ret. Sys. v. Jeffries,* No. 2:14-CV-1380, 2014 WL 7404000, at *13 (S.D. Ohio Dec. 30, 2014).

[6] The partner rates charged range from $735-750 per hour (Detroit and Houston area counsel) to $900 (Chicago). Associate rates range from $325-400 (Detroit and Houston) to $600 (senior associate Chicago).

reasonable. *Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.,* No. 2:10–cv–00789, 2014 WL 5034643, at *8 (S. D. Ohio, Oct. 8, 2014) ($125 per hour for paralegals). Applying rates currently charged by counsel to the hours expended in this case yields a true "lodestar" time/hourly value of $501,121.[7]

To this lodestar Plaintiffs' Counsel seeks a downward multiplier to comport with the settlement agreement.

### 3. THE REQUESTED FEE IS FAIR AND REASONABLE GIVEN THE REAL RISK THAT PLAINTIFFS' COUNSEL COULD HAVE RECEIVED NO COMPENSATION FOR THEIR EFFORTS IF THE LITIGATION HAD NOT BEEN SUCCESSFUL.

The settling Defendants are represented by highly experienced and competent counsel. Absent the settlement, Plaintiffs believe that these Defendants and their counsel were prepared to defend this case through trial and appeal. Litigation risk is inherent in every case, and this is particularly true with respect to class actions. Therefore, while the Class Representative Plaintiff remained optimistic about the outcome of this litigation, he must acknowledge the risk that Defendants could prevail with

---

[7] The United States Supreme Court has held that the use of current rates, as opposed to historical rates, is appropriate to compensate counsel for inflation and the delay in receipt of the funds. *Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989); see also *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987).

respect to certain legal or factual issues, which could result in reducing or eliminating any potential recovery.

In light of this reality, the risk factor attempts to compensate class counsel in contingent fee litigation for the possibility that they may end up receiving less than their normal hourly rates, or even nothing at all. *See, e.g. Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), *overruled on other grounds*, *Int'l Woodworkers of Am. AFL-CIO and its Local No. 5-376 v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19 (risk of non-payment a factor supporting the requested fee). There was certainly a risk that Plaintiffs' Counsel would recover nothing. Therefore, the risk of non-payment is another factor that supports the requested fee. *In re Wire Harness Cases*, 2:12-cv-00101 (E.D. Mich.) (Doc. 495), at 4.

### 4.    SOCIETY HAS AN IMPORTANT STAKE IN THIS LAWSUIT AND IN AN AWARD OF REASONABLE ATTORNEYS' FEES TO CLASS COUNSEL.

It is well established that there is a "need in making fee awards to encourage attorneys to bring class actions to vindicate public policy … as well as the specific rights of private individuals." *In re Folding Carton Antitrust Litig.*, 84 F.R.D. 245, 260 (N.D. Ill. 1979). Courts in the Sixth Circuit weigh "society's stake in rewarding attorneys who [win favorable outcomes] in order to maintain an incentive to others . . Society's stake in rewarding attorneys who can produce such benefits in complex

litigation such as in the case at bar counsels in favor of a generous fee . . ." *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 534 (E.D. Mich. 2003), app. dismissed 391 F.3d 812 (6th Cir. 2004) (internal quotation marks omitted). *Accord, Delphi,* 248 F.R.D. at 504.

This case sought to vindicate a number of losses from people who Plaintiffs claimed were tricked into investing in a phony security. Neither the Securities and Exchange Commission, the federal entity typically charged with enforcing consumer/investor rights in such cases, nor state attorney generals (though two investigations were opened, in Michigan and Colorado) filed enforcement actions. Thus, in a significant sense, in this case the Plaintiffs' counsel have acted as private attorney general to vindicate the settling class rights.  In this regard, the recovery Plaintiffs' Counsel have obtained makes it clear that violations of this type will be the subject of vigorous private civil litigation that will deter similar future conduct. Since society as a whole gains from competitive markets free of this type of conduct, Plaintiffs' Counsel's work benefitted the general public.

## D.   THE COMPLEXITY OF THIS CASE SUPPORTS THE REQUESTED FEE.

As set forth above, Plaintiffs' Counsel and the Court have already grappled with a variety of complex securities issues in this case, and there would have been more to address later in the absence of the settlement.

**E.     SKILL AND EXPERIENCE OF COUNSEL.**

The skill and experience of counsel on both sides is a factor that courts may consider in determining a reasonable fee award. *E.g., Polyurethane Foam,* 2015 WL 1639269, at *7; *Packaged Ice,* 2011 WL 6219188, at *19. Plaintiffs' Counsel have the requisite skill and experience in class action and pyramid scheme litigation to effectively prosecute these claims. Given the result achieved, the complexity of the claims and defenses, the work performed by Plaintiffs' Counsel, the real risk of non-recovery, formidable defense counsel, the delay in receipt of payment, the substantial experience and skill of Plaintiffs' Counsel, the downward multiplier on the lodestar, and the societal benefit of this litigation, an attorneys' fee and costs award of $115,000 would be reasonable compensation for Plaintiffs' Counsel's work.

**V.     REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES.**

Plaintiffs' Counsel respectfully request an award of litigation costs and expenses in the amount of $19,156.56. The expenses incurred by each law firm are set forth in the Declarations attached as Exhibits 1, 2, and 3. *In re Cardizem,* 218 F.R.D. at 535 ("class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, travel and other litigation-related expenses."). These expenses were reasonable and necessary to pursue the case and to obtain the substantial settlements reached in this litigation.

## VI.    AN INCENTIVE AWARD TO THE CLASS REPRESENTATIVE ARE WARRANTED.

Plaintiffs' Counsel also respectfully request that the Court award the Class Representative $15,000. The Notice received by the class members discloses this amount, which will be paid by the Defendant, and not out of a common fund. The Sixth Circuit has noted that incentive awards may be appropriate under some circumstances, although it has never explicitly approved or disapproved of them. *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 311 (6th Cir. 2016); *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). In surveying decisions from other courts, the Court of Appeals in *Hadix* explained:

> Numerous courts have authorized incentive awards...These courts have stressed that incentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class. Yet applications for incentive awards are scrutinized carefully by courts who sensibly fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain.

*Hadix*, 322 F.3d at 897 (internal citations omitted).

This is not a case where the Class Representative compromised the interests of the class for personal gain. He was not promised an incentive award. The settlement was negotiated by Plaintiffs' Counsel and then presented to the class representative for his review and approval without discussion of incentive awards, which evinces that

21

such awards were not the reason the representative plaintiff approved these settlements. *Hillson v. Kelly Servs. Inc.*, 16 2017 WL 279814, at \*6 (E.D. Mich. 2017).

In deciding whether an incentive award is appropriate, courts may consider, among other things, "whether the actions of the named plaintiffs protected the interests of the class members and have inured to the substantial benefit of the class members," and "the amount of time and effort expended by the named plaintiffs in pursuing the class action litigation." *See In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 275 (S.D. Ohio 1997). Incentive awards are "typically justified" in circumstances where, as here, "the named plaintiffs expend[ed] time and effort beyond that of other class members in assisting counsel with the litigation. . ." *Id.* at 273. Indeed, here, the Class Representatives devoted substantial time and effort in representing the interests of the class members, including but not limited to the following:

- Communicating and meeting with counsel to discuss the nature of the claims, his experience with ViSalus, and the complicated fact situation;

- Reviewing pleadings and keeping apprised of the status of the litigation;

- Reviewing the details of, and conferring with counsel regarding settlements.

22

The FEIP shares at issue were part of an alleged scheme to enhance awards to a distribution business run by Harris. Depending on the circumstances, incentive awards of $30,000 or more are common in lengthy, highly complex cases such as this to business entities. *See also In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at \*5 (granting class representatives awards of $50,000 each); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at \*1 (same).

The Class Representative put in time and effort and provided commendable service on behalf of the class members to create the settlement. The requested award is fair to the class and appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for an Award of Attorneys' Fees, Litigation Costs and Expenses, and incentive awards to the Class Representatives.

Dated: August 19, 2019

Respectfully submitted,

s/ Andrew Kochanowski
Andrew Kochanowski
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, MI 48076
(248) 355-0300
akochanowski@sommerspc.com

s/ Matthew J.M. Prebeg
Matthew J.M. Prebeg

23

Brent T. Caldwell
PREBEG, FAUCETT & ABBOTT, PLLC
Attorneys for Plaintiffs
8441 Gulf Freeway, Suite 307
Houston, TX 77017
(832) 743-9260
mprebeg@pfalawfirm.com
bcaldwell@pfalawfirm.com

*s/ Mark R. Miller*
Edward A. Wallace
Mark R. Miller
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
(312) 589-6272
EAW@wexlerwallace.com
MRM@wexlerwallace.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2019, I electronically filed the foregoing document with the Clerk of the court using the ECF system, which will send notification of such filing to all counsel of record registered for electronic filing.

*s/ Andrew Kochanowski*
Andrew Kochanowski